**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| EAGLE SERVICES CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:02-CV-36-PRC |
| | ) | |
| H20 INDUSTRIAL SERVICES, INC., | ) | |
| DONALD L. BRAMMER, MICHAEL | ) | |
| NILOFF, CARL F. TAYLOR, and | ) | |
| DONNA M. SENG, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion #3 for Summary Judgment [DE 124] and on Defendants' Motion #4 for Partial Summary Judgment [DE 128], both filed by the Defendants, on February 11, 2005. For the following reasons, the Court denies Motion #3 for Summary Judgment [DE 124] and grants Motion #4 for Partial Summary Judgment [DE 128].

## PROCEDURAL BACKGROUND

On January 29, 2002, the Plaintiff, Eagle Services Corp. ("Eagle"), filed a Complaint against Defendants H20 Industrial Services, Inc. ("H20"), Donald L. Brammer, Carl F. Taylor, Kenneth Koth, Donna M. Seng, and Kurt Looft. In its Complaint, Eagle alleged copyright infringement, misappropriation of trade secrets, civil and criminal conversion, and tortious interference with business relationships and sought a preliminary injunction.

Eagle filed a Motion for Preliminary Injunction on February 21, 2002. Eagle amended its Motion on February 25, 2002, and thereafter filed a Motion to Dismiss Count VI of its Complaint (Preliminary Injunction). On May 29, 2002, District Court Judge Phillip P. Simon granted Eagle's Motion to Dismiss and Eagle withdrew its Amended Motion for Preliminary Injunction.

The Defendants filed a Motion to Dismiss Eagle's Complaint on March 11, 2002, alleging

that the Court lacked jurisdiction over the subject matter of Eagle's Complaint. The Defendants claimed that registration of a copyright is a jurisdictional prerequisite to an action for infringement and that because Eagle had failed to plead that it had obtained a copyright registration, the Court lacked jurisdiction over Eagle's Complaint. On March 22, 2002, Eagle filed its First Amended Complaint and response to the Defendants' Motion to Dismiss. Eagle's First Amended Complaint alleges a registered copyright. On April 26, 2002, Judge Simon denied the Defendants' Motion to Dismiss as moot.

On May 16, 2002, Judge Simon granted Eagle's motion to voluntarily dismiss Defendant Kurt Looft. Defendants H20, Donald L. Brammer, Carl F. Taylor, Kenneth Koth, and Donna M. Seng filed an Answer to Eagle's First Amended Complaint on June 7, 2002. On January 29, 2003, the Defendants filed an Amended Answer to Eagle's First Amended Complaint.

On January 29, 2003, H20 filed a Third-Party Complaint against John Augustinovich and Sam Raich III and filed a Counterclaim against Eagle. On April 21, 2003, the third-party Defendants filed an Answer to H20's Third-Party Complaint, and Eagle filed its Answer to H20's Counterclaim.

On October 21, 2003, Defendants H20, Donald L. Brammer, and Carl F. Taylor filed Motion #1 for Partial Summary Judgment. Also on October 21, 2003, Defendants H20, Donald L. Brammer, Carl F. Taylor, and Kenneth Koth filed Motion #2 for Partial Summary Judgment. In Motion #1, the Defendants alleged that Eagle's Amended Complaint did not state a cause of action against individual Defendants Carl F. Taylor, Kenneth Koth, and Donna M. Seng and that Eagle's state law claims (civil and criminal conversion, tortious interference with business relationships, and misappropriation of trade secrets) were preempted by the Copyright Act. The Defendants asserted in Motion #2 that Eagle did not own a valid copyright because significant portions of the materials in which Eagle claimed a copyright were created by M&R Consulting Group, LLC, ("M&R") an independent contractor.

On January 5, 2004, Judge Simon granted in part and denied in part the Defendants' Motion #1 for Partial Summary Judgment. Motion #1 was granted as to the issues of Kenneth Koth's individual liability for the infringement and the preemption of Eagle's state law claims. The Motion was denied with respect to the issue of individual liability for Carl F. Taylor and Donna M. Seng. Judge Simon denied Motion #2 for Partial Summary Judgment, finding that genuine issues of material fact exist concerning the relationship between Eagle and M&R.

On May 5, 2004, Judge Simon granted the parties' Joint Stipulation for Dismissal of Counterclaim and Third Party Complaint, thereby dismissing H20's Counterclaim against Eagle and H20's Third-Party Complaint against John Augustinovich and Sam Raich III.

The parties consented on October 13, 2004, to have this case reassigned to Magistrate Judge Paul Cherry to conduct all further proceedings and to order the entry of a final judgment in this case.

On October 21, 2004, Eagle filed its Second Amended Complaint against Defendants H20, Michael Niloff, Donald L. Brammer, Donna M. Seng, and Carl F. Taylor. The Defendants filed an Answer to Eagle's Second Amended Complaint on November 22, 2004.

On February 11, 2005, the Defendants filed Motion #3 for Summary Judgment and Motion #4 for Partial Summary Judgment along with supporting materials. On March 31, 2005, Eagle filed responses in opposition to the Defendants' Motions. The Defendants filed their reply briefs in support of their Motions on April 29, 2005.

On June 15, 2005, Eagle filed a Sur-Response in opposition to the Defendants' Motion #3 for Summary Judgment. The Defendants filed a Sur-Reply in support of Motion #3 on July 5, 2005.

Since the parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. 636(c).

## FACTUAL BACKGROUND

During 1996, Eagle attached notices of copyright to a safety manual ("Manual"), which it used to ensure compliance with industrial workplace safety regulations promulgated by the U.S. Occupational Safety & Health Administration ("OSHA").  According to the testimony of H2O's president and vice president, Eagle's Manual served two primary functions: 1) to ensure workplace safety; and 2) for marketing purposes.  During or before December 2001, H20 and certain of its employees reproduced and distributed Eagle's Manual and used the same in connection with the operation of H20's business.

Eagle's Manual was first created and published in 1996; however, certain portions of the Manual were revised in later years.  Eagle obtained its Certificate of Registration from the U.S. Copyright Office for the "Eagle Safety Procedures Manual" on March 1, 2002, more than five years after the date of first publication.[1]  The Manual in which Eagle claims a copyright was identified in Eagle's Certificate of Registration by the single title of "Safety Policies & Procedures."

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[S]ummary judgment is appropriate–in fact, is mandated–where there are

---

[1] Eagle concedes that its Manual is not entitled to the rebuttable presumption of copyright validity since it did not obtain a Certificate of Registration from the U.S. Copyright Office until five years after the date of first publication.  *See* 17 U.S.C. § 410(c)  ("In any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").  The Court further discusses the rebuttable presumption in Part B of its Discussion with regard to Defendants' Motion #4 for Partial Summary Judgment.

4

no disputed issues of material fact and the movant must prevail as a matter of law.  In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.  When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id.* at 323, 235; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists.  *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.  Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).  Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  *See Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-50 (1986).  Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the nonmoving party must come forward with specific facts showing that there is a genuine issue for

trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## DISCUSSION

### A. Motion #3 for Summary Judgment

The Defendants assert in their Motion #3 for Summary Judgment and supporting briefs that Eagle's Manual is not entitled to protection under copyright law because it is comprised solely of procedures, processes, systems, methods of operation, or concepts for complying with OSHA regulations, all of which, the Defendants claim, are precluded from copyright protection under the Copyright Act. Alternatively, the Defendants allege that, even if Eagle's entire Manual is not outside the scope of copyright protection, it is, nevertheless, still not entitled to copyright protection because it is almost exclusively comprised of verbatim copies of OSHA regulations, close paraphrases of OSHA regulations, expressions which are inseparable from or the functional equivalent of OSHA regulations, or stock and standard expressions which are common to any discussion of OSHA regulations. The Defendants also argue that portions of Eagle's Manual are not copyrightable based on the doctrines of merger and *scènes à faire*.

In its responsive briefs, Eagle claims that its Manual is more than a description of procedures, processes, systems, methods of operation, or concepts for complying with OSHA regulations because the Manual serves an important marketing purpose. Eagle also asserts that it

6

is not claiming a copyright in the ideas or processes contained in its Manual, but rather is claiming a copyright in the *expression* of those ideas or processes.  Eagle submits that the portion of its Manual containing OSHA regulations is protectable as both a compilation of facts and as a derivative work.  Lastly, Eagle contends that the doctrines of merger and *scènes à faire* are not applicable to this case.

In order to prevail on a claim of copyright infringement, a plaintiff must prove ownership of a valid copyright, as well as the copying of constituent elements of the work that are original.  *See Feist Pub'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).  To be copyrightable, a work of authorship need only be "original," which the Supreme Court has defined to mean that the work was not copied and evidences "at least minimal" creativity.  *Id.* at 345.

The issue of copyrightability is an issue of law for the court to decide.  *See Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004); *Publications Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996); *Pivot Point Int'l, Inc. v. Charlene Prod., Inc.,* 932 F. Supp. 220, 225 (N.D. Ill. 1996) (Easterbrook, J., sitting by designation) (holding that, "[w]hether [items] are copyrightable is a question of law, which the court will decide . . . .  A jury has nothing to do with this subject."); 3-12 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.10[B] (2005) [hereinafter *Nimmer*] (stating that "determinations of copyrightability in all instances" are always reserved to the judge and are therefore appropriate for summary judgment).

*1. Idea vs. Expression*

The Defendants first assert that Eagle's Manual is not copyrightable because it is comprised solely of procedures, processes, systems, methods of operation, or concepts for complying with OSHA regulations.  While Eagle acknowledges that the processes and methods to describe workplace safety are not subject to copyright, it asserts that the *expression* of those processes and methods is entitled to protection.

7

Throughout the years of developing copyright jurisprudence, a judicial theory has emerged that ideas are too important to the advancement of knowledge to permit them to be under private ownership and that open public debate, which is essential to a free democratic society, requires free access to the ideas to be debated.  *See CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.,* 44 F.3d 61, 69 (2d Cir. 1994).  This limitation on copyright law is known as the "idea-expression dichotomy."  In essence, this means that while copyright protection does not extend to ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries, it does extend to the *expression* of those ideas and processes.  *See Mazer v. Stein,* 347 U.S. 201, 217 (1954) (holding that "protection is given only to the expression of the idea–not to the idea itself"); *Baker v. Selden*, 101 U.S. 99, 102-03 (1879); *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d Cir. 1976) ("It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself.").

Although the idea-expression dichotomy originated in case law, it is now codified in the Copyright Act, which provides:

> In no case does copyright protection for an original work of authorship extend to any *idea, procedure, process, system, method of operation, concept, principle, or discovery*, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b) (emphasis added).  Nimmer explains the justification behind the idea-expression dichotomy:

> The policy rationale underlying the Act's exclusion of ideas from copyright protection is clear.  To grant property status to a mere idea would permit withdrawing the idea from the stock of materials that would otherwise be open to other authors, thereby narrowing the field of thought open for development and exploitation.  This effect, it is reasoned, would hinder rather than promote the professed purpose of the copyright laws, i.e., "the progress of science and useful arts."

4-13 *Nimmer* § 13.03[B][2][a] (internal footnotes omitted).  Despite the importance of this dichotomy, it is a "difficult task in an infringement action to distill the nonprotected idea from

8

protected expression."  *Reyher,* 533 F.2d at 91; *see also Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960) (Hand, J.) ("[N]o principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.'  Decisions must therefore inevitably be ad hoc.").

In ascertaining the "elusive boundary line" between idea and expression, courts have looked to the doctrines of merger and *scenes a faire.  See Lexmark Int'l, Inc. v.  Static Control Components, Inc.,* 387 F.3d 522, 535 (6th Cir. 2004).[2]  When determining whether these doctrines apply, courts focus on whether the idea is capable of various methods of expression.  *Id.* at 536.  The question, however, is not how many alternatives actually exist; rather, it is "whether other options practically exist under the circumstances."  *Id.*  In *Kregos v. Associated Press,* the 2nd Circuit stated that:

> The fundamental copyright principle that only the expression of an idea and not the idea itself is protectable, has produced a corollary maxim that even expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.

937 F.2d 700, 705 (2d Cir. 1991) (internal citations omitted).

a.  Merger Doctrine

The merger doctrine thus bars copyright protection when "there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself."  *Kregos*, 937 F.2d at 705.  Determining when the idea and its expression have merged is a difficult task: "if the merger doctrine is applied too readily, arguably available alternative forms of expression will be precluded; if applied too sparingly, protection will be accorded to ideas."  *Id.*

---

[2] The Court notes that there is some disagreement as to whether the doctrines of merger and scènes à faire figure into the issue of copyrightability or are more properly defenses to infringement.  *See* 4-13 *Nimmer* §§ 13.03[B][3], 13.03[B][4]; *see also Reed-Union Corp. v. Turtle Wax, Inc.,* 77 F.3d 909, 914 (7th Cir. 1996) (explaining why the doctrine of scènes à faire is separate from the validity of a copyright); *accord ETS-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1082 (9th Cir. 2000)*; Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991) (holding that the merger doctrine relates to infringement, not copyrightability).  However, regardless of where the analysis occurs, the Court believes that neither doctrine is applicable to this case.

9

Thus, the key to applying the merger doctrine is correctly stating the idea at issue.  The Third Circuit has suggested the following method to distinguish idea from expression:

> [T]he line between idea and expression may be drawn with reference to the end sought to be achieved by the work in question.  In other words, *the purpose or function of a utilitarian work would be the work's idea, and everything that is not necessary to that purpose or function would be part of the expression of the idea*.  Where there are various means of achieving the desired purpose, then the particular means chosen is not necessary to the purpose; hence, there is expression, not idea.

*Whelan Assocs., Inc. v.  Jaslow Dental Lab., Inc.,* 797 F.2d 1222, 1236 (3rd Cir. 1986) (internal citations omitted).  Therefore, in determining whether a work contains adequate expression, a court must determine whether there are various means of achieving the desired purpose.

In this case, the Defendants argue that the purpose of Eagle's Manual is merely to describe the methods, practices, and procedures used to ensure workplace safety.[3]  Although the Defendants' expert witness, Peter J. Engelbert, opined that the purpose of Eagle's Manual is to describe methods for ensuring workplace safety, he also stated that written safety practices, procedures, and methods adopted by employers can be used in other ways in their business operations, such as in sales and marketing.

Eagle asserts that it reorganized, summarized, and coordinated specific OSHA regulations into a more readable format with the purpose of ensuring workplace safety.  Additionally, as evidenced by the testimony of two of Eagle's previous project managers (currently H20's President and Vice President), one of the main purposes of Eagle's Manual was to serve a marketing function.  Thus, when viewing the facts in a light most favorable to Eagle, the Manual serves two purposes: 1) to ensure workplace safety; and 2) for use as a marketing tool.

---

[3] The Defendants contend that the Court must filter out under an "abstractions test" all expression which is inseparable from or which is the functional equivalent of the ideas, processes or discoveries embodied in Eagle's Manual because such expression is not protectable under copyright law.  The Defendants state that courts, in attempting to distinguish between ideas or processes and the expression of those ideas or processes, have adopted an "abstractions test," which requires a court to examine the work in question and to abstract and filter out from that work those elements that are not protectable by copyright. *See CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.,* 44 F.3d 61, 69 (2d Cir. 1994). However, the Seventh Circuit has not expressly adopted such a test, and the Court has found no decisions in this Circuit where a court has applied such an "abstractions test" to a compilation.  Eagle asserts that use of the "abstractions test" would essentially render all compilations non-copyrightable.  Accordingly, the Court will not utilize an "abstractions test" in determining the copyrightability of Eagle's Manual.

The Defendants also claim that since there is only one or so few ways of expressing the idea in Eagle's Manual, protection of the expression would effectively afford protection to the idea itself. Eagle, however, argues that there are numerous ways in which to express the idea in its Manual.

The Court finds that the format and structure which Eagle has chosen for its Manual is not unavoidable. There are many different ways in which a company can structure and organize its safety materials. For example, a company can determine what sections to include and how they will be formatted. Companies might also choose, as Eagle did, to insert additional information into its materials not found in the OSHA regulations. When there are a variety of structures through which an idea can be expressed, the structure is not a necessary incident to that idea. *See Whelan,* 797 F.2d at 1240. As Eagle points out, its Manual is structured in a different manner than H20's "new" set of health and safety documents recently produced. Therefore, it is possible to organize a work similar to Eagle's in a different format or structure.

Again, the line for determining when an idea has become sufficiently delineated to warrant copyright protection "is a pragmatic one, drawn not on the basis of some metaphysical property of 'ideas,' but by balancing the need to protect the labors of authors with the desire to assure free access to ideas." 4-13 *Nimmer* § 13.03 (footnotes omitted). In the present case, Eagle is not attempting to withdraw certain OSHA regulations from the public domain. Rather, Eagle is attempting to protect the expression of the idea of its safety policy. It is possible to label Eagle's Manual as an expression of an idea rather than an idea itself and still enable free access to the OSHA regulations.

"The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" *Feist*, 499 U.S. at 349 (citing Art. I § 8, cl. 8; *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)). "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Id*. A finding that Eagle's Manual contains expression continues to give authors an incentive to express their ideas and create other manuals in which to ensure

11

workplace safety in their respective industries.  Accordingly, the Court finds that the merger doctrine does not preclude copyright protection for Eagle's safety Manual.

b.  *Scènes à Faire* Doctrine

The Defendants also allege that since certain portions of Eagle's Manual are composed of stock or standard words and phrases, it falls under the *scènes à faire* doctrine and is, therefore, not copyrightable.  The merger and *scènes à faire* doctrines are similar.  Both preclude copyright protection because the subject matter represented can be expressed in very few ways.  The concept of *scènes à faire* was introduced into copyright jurisprudence by a case involving a dispute between script writers and filmmakers, where the phrase was defined as "scenes which must be done."  *See Taylor Corp. v. Four Seasons Greetings, LLC,* 315 F.3d 1039, 1042 (8th Cir.  2003).  This doctrine has been applied mostly in the film, television, and video contexts.  *See id.*  "'*Scènes à faire*' refers to 'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic.'"  *Id.* (citing *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 616 (7th Cir. 1982)).

"*Scènes à faire* are afforded no protection because the subject matter represented can be expressed in no other way than through the particular *scène à faire*."  *Whelan,* 797 F.2d at 1236.  Thus, granting a copyright in the expression would give the first author a monopoly on the commonplace ideas behind the *scènes à faire.  See id* (citations omitted).  Under this doctrine, the expression embodied in the work cannot necessarily flow from a commonplace idea, it must contain creative efforts of the designer.  *See ETS-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1082 (9th Cir. 2000).

In the present case, as analyzed above, it is possible to have different ways in which to express a company's safety processes and methods.  Thus, the Court finds that the *scènes à faire* doctrine does not bar copyright protection for Eagle's safety Manual.

*2.  Factual Compilations*

Another basis for the Defendants' Motion #3 for Summary Judgment is that Eagle's Manual is not original but is instead comprised of verbatim copies, close paraphrases, and functional equivalents of OSHA regulations and other industry standards.[4]  In response, Eagle claims that the portion of its Manual containing OSHA regulations is best characterized as a "compilation," and as such, is copyrightable.[5]

The Copyright Act of 1976 confers limited protection on compilations.  Section 103(a) of the Act, as codified in the United States Code, specifies that "[t]he subject matter of copyright . . . includes compilations," which are defined by Section 101 as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. §§ 101, 103.  Section 103(b) of the statute also makes clear that the protection in a compilation "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply an exclusive right in the preexisting material."  17 U.S.C. § 103(b); *see also Feist*, 499 U.S. at 359.

Three elements are required by the Copyright Act in order for a work to qualify as a copyrightable compilation: "(1) the collection and assembly of preexisting material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement of an 'original work of authorship.'"  *See Fiest,* 499 U.S. at 357 (citing *Mills Music, Inc. v. Snyder,* 469 U.S. 153, 164 (1985)).  Selection

---

[4] However, the Defendants, in a seemingly contradictory argument assert on page 23 of their Reply Memorandum in Support of Motion #3 for Summary Judgment that the contents of Eagle's Manual's are *not* verbatim copies of other works.

[5] Throughout their briefing, the Defendants assert that Eagle has designated no evidence, by affidavit or otherwise, to support the argument that Eagle's Manual is a compilation.  Specifically, the Defendants claim that Eagle has produced no evidence to dispute the Defendants' "expert's" testimony that Eagle exercised no discretion in the selection of OSHA regulations  and thus the Defendants are entitled to summary judgment.  The Court reminds the parties that the issue of copyrightability is an issue of law for the Court to decide.  *See Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004).  There is no need for expert testimony on this subject.  *See Pivot Point Int'l, Inc. v. Charlene Prod., Inc.,* 932 F. Supp. 220, 225 (N.D. Ill. 1996) (stating that there is only one legal expert on the issue of copyrightability-the judge).

implies the exercise of judgment in choosing which material from a given body of data to include in a publication.  *See Key Publ'n, Inc. v. Chinatown Today Publ'g Enters., Inc.,* 945 F.2d 509, 513 (2d Cir. 1991).  Arrangement "refers to the ordering or grouping of data that go beyond the mere mechanical grouping of data as such, for example, the alphabetical, chronological, or sequential listings of data."  *Id.* (citing Copyright Office, Guidelines for Registration of Fact-Based Compilations 1 (Rev. Oct. 11, 1989)).  "[The] choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently creative to be protected."  *Feist*, 499 U.S. at 348.

The leading case on compilations is the Supreme Court case of *Feist Publications v. Rural Telephone Services*, 499 U.S. 340 (1991).  In that case, Rural, a public utility providing telephone service, published a typical telephone directory, consisting of white pages and yellow pages, and obtained a copyright in the directory.  *Id.* at 342.  Feist Publications specialized in area-wide telephone directories and sought a license from Rural for use of its white page listings for eleven different telephone service areas.  *Id.* at 342-43.  When Rural refused to license its white pages, Feist extracted the listings it needed from Rural's directory without Rural's consent.  *Id.* at 343.  The Supreme Court granted certiorari to determine whether the copyright in Rural's directory protected the names, towns, and telephone numbers copied by Feist.  *Id.* at 344.  After a thorough analysis of the development of copyright jurisprudence regarding factual compilations, the Supreme Court held that Rural's white pages lacked the requisite originality necessary for a compilation and thus Feist's use of the listings could not constitute infringement.  *Id.* at 364.

In this case, the Defendants argue that Eagle's Manual is not a compilation because: 1) it does not meet the definition of a compilation under the Copyright Act because the Manual contains changes in the preexisting materials; and 2) there is no evidence of any creativity in the selection and arrangement of the Manual.  Eagle concedes that certain portions of its Manual contain language derived from OSHA regulations in the form of verbatim quotes, paraphrases, and summaries.  However, Eagle asserts that its Manual is original because it reorganizes, summarizes, and

coordinates the regulations into a format appropriate for its business, thus warranting copyright protection as a compilation.  The Court will address each of the Defendants' arguments in turn.

a.  "Internal Changes" in the Preexisting Material

The Defendants claim that in order for Eagle's Manual to be considered a compilation, it must consist merely of a selection and arrangement of OSHA regulations, without any internal changes in those regulations.  In other words, the Defendants argue that any recast, transformation, or internal change in the preexisting material takes Eagle's Manual outside of the definition of a compilation.  As sole legal support for this argument, the Defendants cite to a section in *Nimmer on Copyright* which distinguishes compilations from derivative works.[6]  However, such an argument fails under the principles set forth in *Feist*.  The Supreme Court in *Feist* held that, "if the compilation author clothes facts with an original collocation of words, he or she may be able to claim a copyright in this written expression.  Others may copy the underlying facts from the publication, but not the precise words used to present them."  499 U.S. at 348.  In addition, the Court held that, "[a]s applied to a factual compilation, assuming the absence of original written expression, only the compiler's selection and arrangement may be protected."  *Id.* at 350.  To illustrate, the Court cited to the case of *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556-57 (1985), explaining that "President Ford could not prevent others from copying bare historical facts from his autobiography, but that he could prevent others from copying his 'subjective descriptions and portraits of public figures.'" *Id.* at 348.

The above language in *Feist* thus precludes an argument by the Defendants that Eagle cannot have added any of its own written expression in order for its Manual to be considered a compilation.  Quite the contrary, the Court in *Feist* held that when an author adds written expression to a work,

---

[6] [W]hile a compilation consists merely of the selection and arrangement of pre-existing materials without any internal changes in such materials, a derivative work involves recasting or transforming, i.e., changes in the pre-existing material, whether or not it is juxtaposed in an arrangement with other pre-existing material.

1-3 *Nimmer* § 3.02.

or uses words to help present the preexisting material, he or she can claim a copyright in that written expression. *See Feist,* 499 U.S. at 348.  In this case, Eagle added written expression throughout its Manual by including additional documents and policies not required by OSHA and by presenting the preexisting OSHA material in a manner best suited for its specific business.  Eagle added to and slightly changed the preexisting material in order to make the resulting product more understandable, usable, and readable.  Original written expression does not take a work outside of the definition of a compilation.

Even if this Court were to interpret *Feist* as not permitting "internal changes" in the preexisting material, which it does not, the Court finds the existence of any "internal changes" to the OSHA regulations in Eagle's Manual to be de minimus and of no legal significance to a determination of copyrightability in this case.  For example, Eagle's "Fall Protection Program" reads, in part:

> **EAGLE SERVICES CORP** shall designate a competent person to monitor the safety of other employees and the employer shall ensure that the safety monitor complies with the following requirements:

(Joint Aff. of H. Henson and M. Rees in Support of Motion #3 for Sum. J., Appendix A, Exh. 6 at 146).  The corresponding OSHA regulation reads:

> **The employer** shall designate a competent person to monitor the safety of other employees and the employer shall ensure that the safety monitor complies with the following requirements:

29 C.F.R. § 1926.502(h)(1) (emphasis added).  In addition, Eagle's Hazard Communication Program provides in part:

> Chemical manufacturers and importers **are required to** obtain or develop a **MSDS** for each hazardous chemical they produce or import.

(Joint Aff. of H. Henson and M. Rees in Support of Motion #3 for Sum. J., Appendix A, Exh. 7 at 186) (emphasis added).  In contrast, 29 C.F.R. § 1910.1200(g)(1) provides as follows:

> Chemical manufacturers and importers **shall** obtain or develop a **material safety data sheet** for each hazardous chemical they produce or import.

16

(emphasis added).  The Court finds that these de minimus changes do not take Eagle's Manual out of the definition of a compilation.

b.  Originality

The Defendants also argue that Eagle's Manual is not protectable as a compilation because there is no evidence of any creativity in the selection and arrangement of the Manual.  As previously defined, a compilation is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101.

The *Feist* decision makes clear that originality is the touchstone of copyrightability.  *Feist,* 499 U.S. at 351, 360.  The inquiry into the originality of a compilation focuses on the originality in the selection, coordination, or arrangement of the materials.  *Id.* at 358.  "The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers."  *Id.* at 348.  Thus, originality lies in the new arrangement of the facts or data, not in the facts or data themselves.  *See Feist,* 499 U.S. at 350-51, 360 (holding that a compilation may contain only facts or other preexisting material or data that is in the public domain, and thus not copyrightable, but that the compilation itself remains protectable itself as long as the compilation is the product of the original selection, coordination, or arrangement of those materials); *see also Publications Int'l,* 88 F.3d at 480; *Rockford Map Publishers v. Directory Servs. Co. of Colo., Inc.,* 768 F.2d 145, 149 (7th Cir. 1985).

The originality requirement is not a particularly stringent standard.  *See* 1-2 *Nimmer* §§ 2.01[A], 2.01[B] (explaining that original, as the term is used in copyright, means only that the work was independently created by the author and that it possesses at least some minimal degree of creativity).  "[I]t does not require that facts be presented in an innovative or surprising way."  *Feist*, 499 U.S. at 362.  Even a slight amount of creativity will suffice.  *Id.*  With respect to originality, the Court in *Feist* commented that "[t]he vast majority of works make the grade quite easily, as they

17

possess some creative spark, 'no matter how crude, humble or obvious' it might be." 499 U.S. at 345 (citing 1-1 *Nimmer* at § 1.08[C][1]). "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* However, "the selection and arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever." *Id.* at 362.

The relevant factor in determining creativity is not what facts or regulations Eagle chose to include, rather, it is whether the facts and regulations that were included were arranged and selected in a creative manner. *See Feist,* 499 U.S. at 358. Eagle collected, assembled, and arranged the preexisting materials into a structure it deemed appropriate for its business. Testimony by Eagle's executive officers, Sam Raich III, Sam Raich Jr., and John Augustinovich demonstrates that Eagle redrafted and revised its Manual throughout the years in order for the Manual to best fit its business–whether it was in the structuring and formatting of the OSHA regulations or in the creation of the accompanying written expression. Eagle selected particular OSHA regulations to include in its Manual along with other non-OSHA-mandated documents, such as Eagle's Alcohol and Illegal Drug Policy. Moreover, as Eagle points out, its Manual is different from those of other companies in its industry, including H20's "new" safety manual. The Court finds that Eagle's selection, coordination, and arrangement of the contents in its safety Manual satisfy the originality standard set forth in *Feist*. Accordingly, the Court concludes that Eagle's Manual is copyrightable as a compilation under 17 U.S.C. § 101.

### 3. Derivative Works

In response to Motion #3 for Summary Judgment, Eagle asserts that its Manual is also protectable under copyright law as a derivative work. In response, the Defendants claim that Eagle's Manual does not constitute a derivative work because it is primarily comprised of verbatim quotes, close paraphrasing, and functional equivalents of OSHA regulations and other industry standards and thus does not amount to an original work of authorship. In addition, the Defendants claim that

Eagle's Manual cannot be considered a derivative work because the preexisting material used in Eagle's Manual is itself not subject to copyright.

A derivative work is a "work based upon one or more preexisting works, such as a translation, musical arrangement, . . . or any other form in which a work may be recast, transformed or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modification, which, as a whole, represent an original work of authorship."  17 U.S.C. § 101.  Derivative works and factual compilations are similar and are often confused.  Both are based upon preexisting

material; however, the preexisting material used to create a compilation does not have to be subject to copyright, while the preexisting "work" used in a derivative work must be protectable under copyright law.  *See* 1-3 *Nimmer* § 3.01.

> As explained in a relevant House Report:
>
> A "compilation" results from a process of selecting, bringing together, organizing, and arranging previously existing material of all kinds, regardless of whether the individual items in the material have been or ever could have been subject to copyright.  A "derivative work," on the other hand, requires a process of recasting, transforming, or adapting "one or more preexisting works"; the "preexisting work" must come within the general subject matter of copyright set forth in section 102, regardless of whether it is or was ever copyrighted.

H.R. Rep. No. 94-1476, at 57 (1976), *reprinted* in 1976 U.S.C.C.A.N. 5659, 5670.  According to this report, in order to be considered a derivative work, the preexisting work must come within the general subject matter of copyright.  Section 105 of the Copyright Act, as codified in the United States Code, provides that "[c]opyright protection . . . is not available for any work of the United States Government."  17 U.S.C. § 105.  Therefore, any work of the U.S. Government does not fall within the general subject matter of copyright.

Eagle's Manual is based, in large part, upon OSHA regulations, which are considered work of the U.S. Government.  Therefore, a majority of the preexisting work which Eagle used does not come within the general subject matter of copyright.  Accordingly, the Court concludes that Eagle's Manual is not a derivative work.

*4. Conclusion*

The Court finds that Eagle's Manual is protectable as a compilation under the Copyright Act and that the doctrines of merger and *scènes à faire* do not preclude copyright protection to Eagle's Manual.  However, the Court finds that Eagle's Manual is not protectable as a derivative work. Accordingly, the Defendants' Motion #3 for Summary Judgment is denied.


### B.  Motion #4 for Summary Judgment

In Motion #4 for Partial Summary Judgment, the Defendants move the Court for entry of partial summary judgment in their favor on the basis that Eagle is not entitled to the statutory presumption of validity provided in the Copyright Act, as a matter of law, because Eagle failed to register its copyright with the U.S. Copyright Office until more than five (5) years after the date of first publication of its Manual.  Thus, the Defendants assert that Eagle has the burden at trial of proving that it is the owner of a valid copyright.

To establish direct copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361; *Harris Custom Builders, Inc.* v. *Hoffmeyer,* 92 F.3d 517, 519 (7th Cir. 1996).   In order to prove ownership of a valid copyright, the plaintiff must show that the work is original and that the applicable statutory formalities are followed.  *See Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999).

The Register of Copyrights makes the initial determination of copyrightability before the issuance of a certificate of registration.  *See* 17 U.S.C. § 410(a).  Provided registration is made within five years of the first publication of the work, a certificate of registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate" in any judicial proceeding.  *Id.* at § 410(c); *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507 (7th Cir. 1994).   The presumption of validity includes the requirements of originality and susceptibility to copyright under 17 U.S.C. §102(a).  *See Donald Frederick Evans and Assocs., Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 903 (11th Cir. 1986).

20

While the burden of persuasion as to copyright validity rests with the plaintiff in an infringement action, once the plaintiff produces a copyright certificate that was obtained within five years of the first date of publication, a prima facie case of validity of the copyright is established, and the burden of production shifts to the defendant to introduce evidence of its invalidity.  *See* 17 U.S.C. § 410(c).

In the present case, Eagle specifically concedes in its response to the Defendants' Motion #4 for Partial Summary Judgment that, because it did not register its copyright in its Manual within five years of the first date of publication, it is not entitled to the statutory presumption of ownership of a valid copyright.  Accordingly, the Defendants' Motion #4 for Partial Summary Judgment is granted.


## CONCLUSION

For the foregoing reasons, the Defendants' Motion #3 for Summary Judgment [DE 124] is **DENIED**, and the Defendants' Motion #4 for Partial Summary Judgment [DE 128] is **GRANTED**.

The Court **REAFFIRMS** the Trial Setting of **March 6, 2006, at 8:30 a.m.**, and the Final Pretrial Conference set for **February 24, 2006, at 9:30 a.m.**

SO ORDERED on this 28th day of September, 2005.


s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT


cc:    All counsel of record

21