UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| EAGLE SERVICES CORP., ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> H20 INDUSTRIAL SERVICES, INC., ) <br> DONALD L. BRAMMER, MICHAEL ) <br> NILOFF, CARL F. TAYLOR, and ) <br> DONNA M. SENG, ) <br> ) <br>     Defendants. ) | CAUSE NO.:  2:02-CV-36-PRC |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Reconsideration of 9/28/05 Order [DE 173] and on Defendants' Motion for Clarification of 9/28/05 Order [DE 175],[1] both filed by the Defendants on December 21, 2005. For the following reasons, the Court denies Defendants' Motion for Reconsideration [DE 173] and grants the Defendants' Motion for Clarification of 9/28/05 Order [DE 175].

**PROCEDURAL BACKGROUND**

On January 29, 2002, the Plaintiff, Eagle Services Corp. ("Eagle"), filed a Complaint against Defendants H20 Industrial Services, Inc. ("H20"), Donald L. Brammer, Carl F. Taylor, Kenneth Koth, Donna M. Seng, and Kurt Looft. In its Complaint, Eagle alleged copyright infringement, misappropriation of trade secrets, civil and criminal conversion, and tortious interference with business relationships and sought a preliminary injunction.

Eagle filed a Motion for Preliminary Injunction on February 21, 2002. Eagle amended its

---

[1] Although the Defendants titled DE 175 as a "Motion to Alter Judgment" in the electronic docket text, the attached document is entitled "Defendants' Motion for Clarification of 9/28/05 Order." The Court assumes the docket text title was in error and therefore will refer to DE 175 in this Order as Defendants' Motion for Clarification.

Motion on February 25, 2002, and thereafter filed a Motion to Dismiss Count VI of its Complaint (Preliminary Injunction). On May 29, 2002, District Court Judge Phillip P. Simon granted Eagle's Motion to Dismiss and Eagle withdrew its Amended Motion for Preliminary Injunction.

The Defendants filed a Motion to Dismiss Eagle's Complaint on March 11, 2002, alleging that the Court lacked jurisdiction over the subject matter of Eagle's Complaint. The Defendants claimed that registration of a copyright is a jurisdictional prerequisite to an action for infringement and that because Eagle had failed to plead that it had obtained a copyright registration, the Court lacked jurisdiction over Eagle's Complaint. On March 22, 2002, Eagle filed its First Amended Complaint and response to the Defendants' Motion to Dismiss. Eagle's First Amended Complaint alleges a registered copyright. On April 26, 2002, Judge Simon denied the Defendants' Motion to Dismiss as moot.

On May 16, 2002, Judge Simon granted Eagle's motion to voluntarily dismiss Defendant Kurt Looft. Defendants H20, Donald L. Brammer, Carl F. Taylor, Kenneth Koth, and Donna M. Seng filed an Answer to Eagle's First Amended Complaint on June 7, 2002. On January 29, 2003, the Defendants filed an Amended Answer to Eagle's First Amended Complaint.

On January 29, 2003, H20 filed a Third-Party Complaint against John Augustinovich and Sam Raich III and filed a Counterclaim against Eagle. On April 21, 2003, the third-party Defendants filed an Answer to H20's Third-Party Complaint, and Eagle filed its Answer to H20's Counterclaim.

On October 21, 2003, Defendants H20, Donald L. Brammer, and Carl F. Taylor filed Motion #1 for Partial Summary Judgment. Also on October 21, 2003, Defendants H20, Donald L. Brammer, Carl F. Taylor, and Kenneth Koth filed Motion #2 for Partial Summary Judgment. In Motion #1, the Defendants alleged that Eagle's Amended Complaint did not state a cause of action against individual Defendants Carl F. Taylor, Kenneth Koth, and Donna M. Seng and that Eagle's state law claims (civil and criminal conversion, tortious interference with business relationships, and misappropriation of trade secrets) were preempted by the Copyright Act. The Defendants asserted

in Motion #2 that Eagle did not own a valid copyright because significant portions of the materials in which Eagle claimed a copyright were created by M&R Consulting Group, LLC, ("M&R") an independent contractor.

On January 5, 2004, Judge Simon granted in part and denied in part the Defendants' Motion #1 for Partial Summary Judgment. Motion #1 was granted as to the issues of Kenneth Koth's individual liability for the infringement and the preemption of Eagle's state law claims. The Motion was denied with respect to the issue of individual liability for Carl F. Taylor and Donna M. Seng. Judge Simon denied Motion #2 for Partial Summary Judgment, finding that genuine issues of material fact exist concerning the relationship between Eagle and M&R.

On May 5, 2004, Judge Simon granted the parties' Joint Stipulation for Dismissal of Counterclaim and Third Party Complaint, thereby dismissing H20's Counterclaim against Eagle and H20's Third-Party Complaint against John Augustinovich and Sam Raich III.

The parties consented on October 13, 2004, to have this case reassigned to Magistrate Judge Paul Cherry to conduct all further proceedings and to order the entry of a final judgment in this case.

On October 21, 2004, Eagle filed its Second Amended Complaint against Defendants H20, Michael Niloff, Donald L. Brammer, Donna M. Seng, and Carl F. Taylor. The Defendants filed an Answer to Eagle's Second Amended Complaint on November 22, 2004.

On February 11, 2005, the Defendants filed Motion #3 for Summary Judgment and Motion #4 for Partial Summary Judgment along with supporting materials. On March 31, 2005, Eagle filed responses in opposition to the Defendants' Motions. The Defendants filed their reply briefs in support of their Motions on April 29, 2005.

On June 15, 2005, Eagle filed a Sur-Response in opposition to the Defendants' Motion #3 for Summary Judgment. The Defendants filed a Sur-Reply in support of Motion #3 on July 5, 2005.

On September 28, 2005, the Court denied Motion #3 for Summary Judgment and granted Motion #4 for Partial Summary Judgment. In its September 29, 2005 Order, the Court reaffirmed the Jury Trial date in this matter set for March 6, 2006.

On December 21, 2005, the Defendants filed the instant Motion for Reconsideration of 9/28/05 Order and Motion for Clarification of 9/28/05 Order.  On January 13, 2006, Eagle filed responses to the Defendants' Motions.  The Defendants filed their reply briefs in support of their Motions on January 25, 2006.

## FACTUAL BACKGROUND[2]

During 1996, Eagle attached notices of copyright to a safety manual ("Manual"), which it used to ensure compliance with industrial workplace safety regulations promulgated by the U.S. Occupational Safety & Health Administration ("OSHA").  According to the testimony of H2O's president and vice president, Eagle's Manual served two primary functions: 1) to ensure workplace safety; and 2) for marketing purposes.  During or before December 2001, H20 and certain of its employees reproduced and distributed Eagle's Manual and used the same in connection with the operation of H20's business.

Eagle's Manual was first created and published in 1996; however, certain portions of the Manual were revised in later years.  Eagle obtained its Certificate of Registration from the U.S. Copyright Office for the "Eagle Safety Procedures Manual" on March 1, 2002, more than five years after the date of first publication.  The Manual in which Eagle claims a copyright was identified in Eagle's Certificate of Registration by the single title of "Safety Policies & Procedures."

## DISCUSSION

The Defendants bring their Motion for Reconsideration of 9/29/05 Order pursuant to Federal Rule of Civil Procedure 54(b).  Motions to reconsider an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e): to correct manifest errors of law or fact or to present newly discovered evidence. *Rothwell Cotton Co. v.*

---

[2] The Court reproduces the facts as set forth in its September 28, 2005 Order, which is under reconsideration in the instant Order.

*Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987).

In their Motion for Reconsideration, the Defendants assert that the court erred by: 1) refusing to apply the abstractions test; 2) concluding that Eagle's Manual was copyrightable; 3) misapplying the merger doctrine; and 4) not apprehending that Eagle is attempting to assert a copyright in a work contained primarily of parroting government regulations. The Defendants also claim that the Court did not address two arguments raised by the Defendants in their briefing: 1) Eagle's compilation theory is contradicted by Eagle's prior admissions; and 2) Eagle's copyright registration contradicts its compilation and joint author claims. In response, Eagle contends that there are no manifest errors of fact or law in the Court's Order of 9/28/05 and that the Defendants have failed to present any new evidence to support their request for reconsideration.

In their Motion for Clarification of 9/28/05 Order, the Defendants seek clarification regarding whether the Court, in denying Defendants' Motion #3 for Summary Judgment, held that the Defendants were not entitled to summary judgment on the issue of copyrightability, or if the Court ruled as a matter of law that Eagle's Manual was copyrightable. Because this issue is presented in similar form in the Defendants' Motion for Reconsideration, the Court will attempt to clarify its ruling through its discussion of the Defendants' Motion for Reconsideration. The Court will address each of the Defendants' arguments in turn.

### A. The "Abstractions Test"

As a basis for their Motion for Reconsideration, the Defendants first assert that the Court erred by refusing to apply the "abstractions test" in determining the copyrightability of Eagle's Manual. In their Motion #3 for Summary Judgment, the Defendants noted that courts have adopted an "abstractions test," which requires a court to examine the work in question and to abstract and filter out from that work those elements which are not protectable by copyright. In the Court's 9/28/05 Order, the Court declined to utilize the "abstractions test," finding that the Seventh Circuit has not expressly adopted such a test and noting that the Court had found no decision in this Circuit where a court had applied such a "test" to a compilation. Eagle, in its

5

response to the Defendants' Motion #3 for Summary Judgment, and again in its response to the Defendants' Motion for Reconsideration, argues that the "abstractions test" is inapplicable to compilations since it would render all compilations non-copyrightable.

The Defendants now cite to *Nash v. CBS, Inc.,* 899 F.2d 1537, for the proposition that the Seventh Circuit has in fact applied the abstractions test. However, this is an incorrect interpretation of *Nash*. In *Nash*, an author brought suit against a television network and others for copyright infringement. *Id.* at 1539. The author claimed that a television episode violated his copyright in four books which set forth his version of the theory that John Dillinger escaped death and started a new life on the west coast. *Id.* The Seventh Circuit, in affirming judgment in favor of the television network, held that the television program used the author's analysis of history, but none of his expression. *Id.* at 1543. In its analysis, the Seventh Circuit discussed Learned Hand's "abstractions test," but did not use it in determining whether the television program had violated the author's copyright. Instead, the Court actually questioned the usefulness of such a test.

> Sometimes called the "abstractions test", Hand's insight is not a "test" at all. It is a clever way to pose the difficulties that require courts to avoid either extreme of the continuum of generality. It does little to help resolve a given case, even when melded with Hand's further observation, in cases such as *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960), that one may ask what the "ordinary observer" would think are the essential parts of the two works' "aesthetic appeal". See also *Selle,* 741 F.2d at 903-05. Who is the "ordinary" observer, and how does this person choose the level of generality? Ordinary observers, like reasonable men in torts, are fictitious characters of the law, reminders that judges must apply objective tests rather than examine their own perceptions. They do not answer the essential question: at what level of generality? After 200 years of wrestling with copyright questions, it is unlikely that courts will come up with the answer any time soon, if indeed there is "an" answer, which we doubt.

*Id.* at 1540.

The Defendants also assert that even if the Seventh Circuit has not adopted the test, the

Court should nevertheless have applied the test because there is no contrary authority in this Circuit, and the test has been consistently adopted and applied by other circuits without any real controversy as to its applicability.  As support, the Defendants cite to *Kohus v. Mariol,* 328 F.3d 848, 854-57 (6th Cir. 2003) and *Country Kids 'N Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1285 (10th Cir. 1996).  Upon examination, the Court finds that these cases are not persuasive in that they do not address the issue of copyrightability of a compilation, but rather appear to use the "abstractions test" to determine whether allegedly infringing items were substantially similar to protectable elements of a copyright owner's items.

Lastly, the Defendants argue that the "test" is equally applicable to a party asserting a compilation copyright as opposed to a party asserting an original or derivative copyright, citing to *CCC Information Services, Inc. v. Macclean Hunter Market Reports, Inc.,* 44 F.3d 61, 69 (2d Cir. 1994) and *Gates Rubber Co. V. Bando American, Inc.,* 798 F.Supp. 1499 (D. Colo. 1992).  However, *CCC Information Services, Inc.* does not provide support for such a proposition.

The Court in *CCC Information Services, Inc.* provided the following history of the "abstractions test:"

> The contradiction between these imperatives, one calling for the protection of creations that will advance the progress of knowledge, the second requiring that these same creations be free of protection, has understandably given rise to bewildering problems of interpretation as to whether copying has been of protected expression or of the unprotected ideas underlying the expression. [FN13] These difficulties led Judge Learned Hand to discourse in *Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir.1930), *cert. denied,* 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931), that takings from a protected source such as a copyrighted play can occur at varying levels of abstraction from the concrete realization of the original, and that the more remote in abstraction the taking is from the original, the less likely that it will constitute a taking of protected expression. [FN14] This has often been referred to as Hand's "abstractions test"; in fact, as Judge Hand and others have noted, [FN15] it is no test at all, but merely a way of perceiving the problem. [FN16]

*Id.*  In a footnote to the above text, the Court also noted that:

> Hand himself, writing thirty years after his above-quoted formulation of the problem, eschewed any pithy solution of it. In his last copyright case, *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487 (2d Cir.1960), he opined that: "Obviously, no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be *ad hoc.* " *Id.* at 489. Thirty years after that, Judge Keeton wrote: "It seems the better part of wisdom, if not valor, not to press the search for a suitable bright-line test ... where Learned Hand, even after decades of experience in judging, found none." *Lotus Dev. Corp. v. Paperback Software Int'l,* 740 F.Supp. 37, 60 (D.Mass.1990). *See also* Patry, *supra,* at 320 (dangerous to attempt to formulate broad rules in this area).

*Id.* Nowhere in the Court's discussion does the Court state that the "abstractions test" is equally applicable to a party asserting a compilation copyright. The Defendants' citation to *Gates Rubber Co. v. Bando American, Inc.* fares no better. The Court's discussion of the "abstractions test" in *Gates* focuses on the test's use in determining "whether a plagiarizing work has taken only the uncopyrightable ideas or the copyrightable expression from a copyrighted work," noting that "[i]t seems only logical that this type of analysis would be undertaken after the application of the substantial similarity test, at which time the fact-finder has determined whether the work is a 'plagiarizing work' of the copyrighted work." 798 F.Supp. 1499, 1516 (D. Colo.,1992). The Court's discussion of the test appears to focus on its use in analyzing whether infringement has occurred, as opposed to determining whether a work is original. Thus, the case does not provide support for the Defendants' above proposition. Accordingly, the Court reaffirms it decision not to utilize an "abstractions test" in determining the copyrightability of Eagle's Manual.

### B.  Copyrightability of Eagle's Manual[3]

The Defendants allege in their Motion for Reconsideration that the Court erred in concluding that Eagle's Manual was copyrightable. The Defendants assert that the Court appeared to go beyond simply ruling on the pending motion by *sua sponte* ruling in Eagle's favor on this issue. The

---

[3] Since this issue is addressed in both the Defendants' Motion for Reconsideration and Motion for Clarification, the Court will attempt to clarify its ruling on Motion #3 for Summary Judgment and Motion #4 for Partial Summary Judgment in this section of the discussion.

8

Defendants claim that as a general rule, a district court may not *sua sponte* grant summary judgment on a claim without giving the losing party ten days' notice and an opportunity to present new evidence as required by Federal Rule of Civil Procedure 56(c), and that here no such notice was provided.

In their Motion #3 for Summary Judgment, the Defendants moved the Court for entry of summary judgment in their favor and against Eagle based on the Defendants' assertion that "the Eagle Safety Practices Manual in which Eagle claims a copyright is not entitled to copyright protection and that Eagle therefore cannot, as a matter of law, sustain its copyright infringement action against the Defendants."  Def. Mot., p. 1.  The Defendants' memorandum in support of Motion #3 for Summary Judgment presented the issue as follows: "Is the Eagle Safety Procedures Manual entitled to copyright protection, or is it, by its very nature, outside the scope of copyright protection?"  Def. Br., pg. 5.

The Defendants now argue that "[w]hile the issue of copyrightability is an issue for the Court to decide, to the extent that a defendant challenges plaintiff's originality or creativity, as Defendants have here, threshold factual determinations relating to this issue are for the jury."  Def. Br., p. 3. The Defendants claim that they "will provide evidence that Plaintiff's works are not original for numerous reasons, including that Plaintiff copied from other companies' preexisting manuals, and that copying pervades Plaintiff's Manual, Plaintiff's copyright must be found to be invalid."  *Id.* In the Defendants' reply in support of their Motion for Clarification, they state that:

> Defendants' Motion #3 did not ask the Court to determine as a matter of law whether Plaintiff's Safety Manual was sufficiently "original" to be copyrightable.  Instead, Defendants merely asked the Court to rule as a matter of law that the Safety Manual was not copyrightable for two (and only two) reasons.  The first reason was that the Safety Manual is not entitled to protection under copyright law because it is comprised solely of ideas, procedures, processes, methods of operation, or concepts for complying with OSHA regulations, all of which are precluded from copyright protection by the Copyright Act.  The second reason was that, even if the Safety Manual was not outside the scope of copyright protection as an unprotected idea or process, it is not entitled to copyright protection because it is almost exclusively comprised of verbatim copies of OSHA regulations, close paraphrases of OSHA

> regulations, and expressions which are inseparable from or the functional equivalent of OSHA regulations.
>
> . . . .
>
> Contrary to Plaintiff's position, Motion #3 did not raise any issues with regard to whether Eagle's Safety Manual was "original," in the sense that it was not copied from any third party's safety manual or whether the Safety Manual lacked the creativity in arrangement and coordination necessary for it to be protectable as a compilation under copyright law.

Def. Reply Br., pp. 4-5.

In its response to the Defendants' Motion for Clarification, Eagle asserts that the Defendants' Motion #3 for Summary Judgment sought a pre-trial dispositive ruling that Eagle's copyrighted work was not original and therefore not copyrightable and that the motion, as presented, required the Court to determine as a matter of law whether Eagle's work was sufficiently original to be copyrightable.

In its 9/28/05 Order, the Court noted that the issue of copyrightability is an issue of law for the court to decide. *See Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004); *Publications Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996); *Pivot Point Int'l, Inc. v. Charlene Prod., Inc.,* 932 F. Supp. 220, 225 (N.D. Ill. 1996) (Easterbrook, J., sitting by designation) (holding that, "[w]hether [items] are copyrightable is a question of law, which the court will decide . . . . A jury has nothing to do with this subject."); 3-12 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.10[B] (2005) [hereinafter *Nimmer*] (stating that "determinations of copyrightability in all instances" are always reserved to the judge and are therefore appropriate for summary judgment).

The Defendants' Motion #3 for Summary Judgment petitioned the Court to determine whether Eagle's Manual is copyrightable subject matter. Although the Defendants alleged two primary bases to support their claim that Eagle's Manual is not entitled to copyright protection, this did not narrow the scope of the issue before the Court. The issue remained whether Eagle's Manual

10

is subject to copyright. In Eagle's response to the Defendants Motion #3 for Summary Judgment, Eagle asserted that its Manual is a compilation, "derived in part from material in the public domain, and in part is original, and when considered as a whole, comprises a new work due to Eagle's organization, compilation, selection and coordination of the material, thus making it copyrightable." Pl. Br., p. 2. The parties then fully briefed the issue of whether Eagle's Manual is protectable under the Copyright Act as a compilation.[4] Accordingly, the Court's Order of 9/28/05 did not *sua sponte* grant summary judgment in favor of Eagle on this issue. The Court issued a ruling on the copyrightability of Eagle's Manual, an issue put before it by the Defendants.

In their Motion for Reconsideration, the Defendants seek to understand the interrelationship between the Court's rulings on Motion #3 for Summary Judgment and Motion #4 for Partial Summary Judgment. In granting Motion #4, the Court noted that Eagle had specifically conceded in its response to Motion #4 that, because it did not register its copyright in its Manual within five years of the first date of publication, it is not entitled to the statutory presumption of ownership of a valid copyright.

In order to prevail on a claim of copyright infringement, a plaintiff must prove ownership of a valid copyright, as well as the copying of constituent elements of the work that are original. *See Feist Pub'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). Proof of ownership breaks down into several constituent parts: 1) originality in the author; 2) copyrightability of the subject matter; 3) a national point of attachment of the work, such as to permit a claim of copyright; 4) compliance with applicable statutory formalities; and 5) (if the plaintiff is not the author) a transfer of rights or other relationships between the author and the plaintiff so as to constitute the plaintiff the valid copyright claimant. *See Nimmer,* § 13.01[A] (2006). The Court, in its 9/28/05 Order,

---

[4] Although not discussed in the Defendants' Motion #3 for Summary Judgment or memorandum in support, the issue of whether Eagle's Manual is protectable under the Copyright Act as a compilation was addressed in Eagle's response brief in opposition to Motion #3 for Summary Judgment, the Defendants' reply brief in support of Motion #3 for Summary Judgment, Eagle's sur-response brief in opposition to Motion #3 for Summary Judgment, and the Defendants' sur-reply brief in support of Motion #3 for Summary Judgment.

11

addressed only the second element of a copyright cause of action.  The Court then concluded that Eagle's Manual is copyrightable as a compilation under the Copyright Act.

In their reply in support of the Motion for Reconsideration, the Defendants claim that Eagle has the burden of proof at trial that its work is original, which includes the burden to prove that the work was not copied and that it possesses a minimal degree of creativity.  The Defendants allege that the fact that Eagle now claims a compilation copyright does not negate Plaintiff's burden.  The Defendants also claim in their reply that, "Contrary to Plaintiff's position, Motion #3 did not raise any issues with regard to whether Eagle's Safety Manual was 'original,' in the sense that it was not copied from any third party's safety manual or whether the Safety Manual lacked the creativity in arrangement and coordination necessary for it to be protectable as a compilation under copyright law."

In their reply brief, the Defendants again attempt to make a distinction between the issues raised in Motion #3 for Summary Judgment:

> [B]ecause Motion #3 did not seek a declaration that the Safety Manual was not original (*i.e.,* copied from a third party), no record was developed, no evidence was designated and no arguments were made on that issue.  The issue of whether the Safety Manual was copied from a third party was simply outside the scope of Motion #3 and was, in fact, irrelevant to the issues raised by that Motion.  After all, a work may be original in the sense of not having been copied from a third party but still be outside the scope of copyright protection because it is an uncopyrightable idea or because of the application of the merger or *scènes à faire* doctrines.  Conversely, asking the Court to find that the Safety Manual is not copyrightable because it is an idea or process, or because of the application of the merger or *scènes à faire* doctrine, is not a concession that the Manual is 'original' (*i.e.* independently created and not copied).

Def. Reply Br., p. 5.  In its response to the Motion for Clarification, Eagle asserts that in denying Motion #3, the Court found that Eagle's Work was sufficiently original as a matter of law to be afforded copyright protection as a compilation.  Eagle further asserts that the Court, in granting Motion #4, determined nothing more than that Eagle was not entitled to the statutory presumption

12

of ownership of a valid copyright because its registration occurred more than five (5) years after publication.

As set forth in the Court's 9/28/05 Order, the burden of persuasion as to copyright validity rests with the plaintiff in an infringement action. However, if the plaintiff produces a copyright certificate that was obtained within five years of the first date of publication, a prima facie case of validity of the copyright is established, and the burden of production shifts to the defendant to introduce evidence of its invalidity. *See* 17 U.S.C. § 410(c). In this case, Eagle concedes that it did not register its copyright in its Manual within five years of the first date of publication, and states that it is now required to prove "ownership" of its Manual at the jury trial.

Thus, it appears that because the Court addressed only the second element of ownership (copyrightability of the subject matter) in ruling on Motion #3 for Summary Judgment, Eagle will be required to prove the remaining ownership elements at trial: originality in the author; a national point of attachment of the work, such as to permit a claim of copyright; compliance with applicable statutory formalities; and (if the plaintiff is not the author) a transfer of rights or other relationships between the author and the plaintiff so as to constitute the plaintiff the valid copyright claimant. *See Nimmer,* § 13.01[A] (2006).

In an effort to further clarify, the Court notes that any discussion in the Court's 9/28/05 Order relating to "originality" was in the context of determining whether Eagle's Manual was copyrightable, not for the purpose of determining whether the Manual was copied from a third party. The Court also notes that because the issue of copyrightability has been determined, Eagle is not, contrary to the Defendants' assertions, required to show that the Manual possesses a minimal degree of creativity. This issue has already been decided by the Court.

### C.  The Merger Doctrine

The Defendants also claim that the Court misapplied the merger doctrine in ruling on Motion #3 for Summary Judgment. In its 9/28/05 Order, the Court found that the merger doctrine does not

preclude copyright protection for Eagle's safety Manual.[5]  The Defendants now attempt to reargue their position regarding the application of the merger doctrine as previously set forth in their briefing on Motion #3 for Summary Judgment.  Because the Defendants have not presented any new evidence or compelling reason why the merger doctrine precludes copyright protection to Eagle's Manual, the Court reaffirms its finding that the merger doctrine does not preclude copyright protection for Eagle's safety Manual.  *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1270 (7th Cir.1996)  ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.")

### D. Eagle's Admissions

The Defendants request that the Court reject Eagle's assertion that its Manual is a compilation due to Eagle's alleged admissions.  The Defendants claim that Eagle should be

---

[5] A portion of the Court's analysis regarding application of the merger doctrine is reproduced below:

> The Court finds that the format and structure which Eagle has chosen for its Manual is not unavoidable.  There are many different ways in which a company can structure and organize its safety materials.  For example, a company can determine what sections to include and how they will be formatted.  Companies might also choose, as Eagle did, to insert additional information into its materials not found in the OSHA regulations.  When there are a variety of structures through which an idea can be expressed, the structure is not a necessary incident to that idea.  *See Whelan,* 797 F.2d at 1240.  As Eagle points out, its Manual is structured in a different manner than H20's "new" set of health and safety documents recently produced.  Therefore, it is possible to organize a work similar to Eagle's in a different format or structure.
>
> Again, the line for determining when an idea has become sufficiently delineated to warrant copyright protection "is a pragmatic one, drawn not on the basis of some metaphysical property of 'ideas,' but by balancing the need to protect the labors of authors with the desire to assure free access to ideas." 4-13 *Nimmer* § 13.03 (footnotes omitted).  In the present case, Eagle is not attempting to withdraw certain OSHA regulations from the public domain.  Rather, Eagle is attempting to protect the expression of the idea of its safety policy.  It is possible to label Eagle's Manual as an expression of an idea rather than an idea itself and still enable free access to the OSHA regulations.
>
> "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'"  *Feist*, 499 U.S. at 349 (citing Art. I § 8, cl. 8; *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)).  "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work."  *Id*.  A finding that Eagle's Manual contains expression continues to give authors an incentive to express their ideas and create other manuals in which to ensure workplace safety in their respective industries.  Accordingly, the Court finds that the merger doctrine does not preclude copyright protection for Eagle's safety Manual.

9/28/05 Order, pp. 11-12.

judicially estopped from making any argument that its Manual is a compilation.  As support, the Defendants cite to testimony of Eagle representatives, as originally cited in the Defendants' reply brief in support of Motion #3 for Summary Judgment, that the representatives prepared the Manual from "scratch."

In response, Eagle alleges that the Defendants mischaracterize the testimony of Eagle representatives.  Eagle asserts that it has never, nor have its officers, "taken the position that the documents, in their final form, were entirely drafted 'from scratch' and to make this assertion disregards the context of those officers' deposition testimony, which deposition questions were focused on the 'origination' of the documents, not the formulation of the final documents and which formulation took place over time, not at one sitting."  Upon a review of the relevant testimony, the Court finds that the statements made by Eagle representatives do not constitute binding admissions that Eagle's Manual is not a compilation.

The Defendants also argue that Eagle should be barred from arguing that its Manual is a compilation because of a Statement of Clarification that was filed with the Court by Eagle on April 24, 2002.  The Statement provides, in relevant part:

> Plaintiff wishes to clarify Defendants' classification of the registered work "Saftey (sic) Policies and Procedures."  Defendants' state that the copyright application/registration refers to "Saftey (sic) Policies and Procedures" as an "individual work" and not a "compilation of works."  The copyright application/registration provides no such classification.  *"Saftey (sic) Policies and Procedures" is not a "compilation" as that term is defined in 17 U.S.C. § 101.*  In addition, "Saftey (sic) Policies and Procedures" is not an "individual work" as the term is used in the copyright context.  Rather, "Saftey (sic) Policies and Procedures" is a group of related individual works by the same author which may be registered under a single registration, pursuant to 17 U.S.C. § 408(c).  Therefore, this Court has jurisdiction over, and Plaintiff has the right to present its copyright claim with regard to, its registration of a group of related individual works, namely "Saftey (sic) Policies and Procedures."

Pl. Stat. of Car., p.1 (emphasis added).

Upon review of the docket, it appears that the Statement was filed in response to the briefing on the Defendants' Motion to Dismiss, which was filed on March 11, 2002.  In their Motion to

15

Dismiss, the Defendants claimed that Eagle's failure to plead that it had obtained a certificate of registration prior to the initiation of this action was a jurisdictional defect which deprived the Court of its subject matter jurisdiction over Count I (Copyright Infringement) of Eagle's Complaint.

On March 22, 2002, Eagle filed its First Amended Complaint, alleging that, "On or about March 1, 2002, Eagle obtained a Certificate or Registration on said copyrighted works from the United States Copyright Office." Pl. Amend. Comp., p. 3.

In their reply brief in support of their Motion to Dismiss, filed on April 3, 2002, the Defendants contend that in light of the filing of Eagle's Amended Complaint:

> The Court has jurisdiction over the Plaintiff's copyright claim only with respect to the registered work, "Saftey [sic] Policies and Procedures." The Court does not have jurisdiction over the Plaintiff's copyright claims with respect to the "[undescribed] certain literary works," Amended Complaint ¶ 22, bracketed text added, to which the Plaintiff allegedly affixed notices of copyright in 1996, unless those "certain literary works" have been registered. 17 U.S.C. §411(a).
>
> The copyright application/registration which is attached to the First Amended Complaint states that there is one work, and not a compilation of works. *See,* Exhibit "A" to First Amended Complaint, Section 1 and Section 6. In short, the Plaintiff has, by its late registration, acquired the right to present its copyright claims regarding one document, entitled "Saftey (sic) Policies and Procedures," to this Court. The Court continues to lack jurisdiction to entertain any claims of the Plaintiff to literary works other than this single work entitled "Saftey (sic) Policies and Procedures."

Def. Reply Br., pp. 3-4.

Regarding the Statement of Clarification, Eagle contends, in its response brief in opposition to the Motion for Reconsideration, that:

> Counsel could argue the Work was original, derivative or any such other definition under the Act and counsel's statements are advocacy. Courts are free to disagree, and commonly do, with counsel's arguments and characterizations. Since it is the Court, and not counsel or the parties, who ultimately decides whether a work is original, derivative or a compilation, it is quite irrelevant what a party or their attorney thinks.

16

Pl. Br., p.13, n. 11.

The Court finds that Eagle's Statement of Clarification does not bar Eagle from arguing that its Manual is a compilation. Eagle submitted its Statement of Clarification to the Court in the context of the Defendants' Motion to Dismiss on jurisdictional grounds, not in the context of whether its Manual was copyrightable. As previously discussed, the issue of copyrightability is an issue of law for the court to decide. *See Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004). Although Eagle's Statement is not irrelevant, it does not affect this Court's determination that Eagle's Manual is copyrightable as a compilation.

### E. Eagle's Registration

The Defendants argue that because Eagle failed to assert a compilation in its copyright registration, it should be estopped from claiming that its Manual is a compilation. The Defendants also claim that Eagle's registration is invalid because it failed to identify M&R as an author and failed to identify itself as a joint author.

In response, Eagle contends that its counsel's statements on the registration are irrelevant and that it is the Court who adjudicates the character of Eagle's Work. Eagle alleges that since there is no dispute between joint authors, the registration form has no effect on whether Eagle's work is copyrightable.

While intentional or purposeful concealment of relevant information can render a copyright registration invalid, courts generally have upheld the copyright where this element of "scienter" is lacking. *See Original Appalachian Artworks, Inc.,* 684 F.2d 821, 828 (11th Cir. 1982) (finding that plaintiff's failure to list co-author and failure to complete item six on the copyright application titled 'Compilation or Derivative Work' did not constitute fraud rendering copyright unenforceable). Defendants have not offered any evidence to prove that Eagle's omissions were intentional or purposeful. Thus, the Court finds that Eagle's failure to complete item six (titled "Derivative Work

17

or Compilation") and failure to identify M&R as an author on its copyright registration does not invalidate its registration. Accordingly, Eagle is not estopped from claiming that its Manual is a compilation on this basis.

### F. Government Works

Lastly, the Defendants argue that Eagle cannot own a copyright in a work consisting primarily of government works. In their memorandum in support of their Motion for Reconsideration, the Defendants assert that, "since the OSHA regulations are not copyrightable, a compilation based primarily upon a copy or parroting of the OSHA regulations should also not be entitled to copyright protection."

Eagle responds by claiming that the Defendants continue to misunderstand the nature of Eagle's Manual and contends that it does not claim any copyright in the OSHA regulations. Rather, "Eagle claims a copyright in its written expression of providing a safe work environment for Eagle's employees and their agents." Pl. Br., p.17.

As discussed in the Court's 9/28/05 Order, derivative works and factual compilations are similar. Both are based upon preexisting material; however, the preexisting material used to create a compilation does *not* have to be subject to copyright, while the preexisting "work" used in a derivative work must be protectable under copyright law. *See* 1-3 *Nimmer* § 3.01.[6] The Defendants appear to reargue their position regarding the copyrightability of Eagle's Manual as previously set forth in their briefing on Motion #3 for Summary Judgment without presenting any new evidence or compelling reasons why the Manual should not be entitled to copyright protection. As such, the

---

[6] The Court's 9/28/05 Order also cited to a House Report which provides, in part:

> A "compilation" results from a process of selecting, bringing together, organizing, and arranging previously existing material of all kinds, regardless of whether the individual items in the material have been or ever could have been subject to copyright. A "derivative work," on the other hand, requires a process of recasting, transforming, or adapting "one or more preexisting works"; the "preexisting work" must come within the general subject matter of copyright set forth in section 102, regardless of whether it is or was ever copyrighted.

H.R. Rep. No. 94-1476, at 57 (1976), *reprinted* in 1976 U.S.C.C.A.N. 5659, 5670.

Court reaffirms its ruling that Eagle's Manual is copyrightable as a compilation.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Reconsideration of 9/28/05 Order [DE 173] is **DENIED** and the Defendants' Motion for Clarification of 9/28/05 Order [DE 175] is **GRANTED**.  The Court **CLARIFIES** that in ruling on Defendants' Motion #3 for Summary Judgment, the Court ruled as a matter of law that Eagle's Manual was copyrightable.

The Court REAFFIRMS the Trial Setting of **March 6, 2006, at 8:30 a.m.**, and the Final Pretrial Conference set for **February 24, 2006, at 9:30 a.m.**

SO ORDERED on this 22nd day of February, 2006.

                                              s/ Paul R. Cherry
                                              MAGISTRATE JUDGE PAUL R. CHERRY
                                              UNITED STATES DISTRICT COURT

cc:    All counsel of record