**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| EAGLE SERVICES CORP., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  2:02-CV-36-PRC |
| | ) | |
| H20 INDUSTRIAL SERVICES, INC., | ) | |
| DONALD L. BRAMMER, MICHAEL | ) | |
| NILOFF, CARL F. TAYLOR, and | ) | |
| DONNA M. SENG, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Petition for Attorneys' Fees and Costs [DE 231], filed by the Defendants on April 24, 2006.  On May 31, 2006, Plaintiffs filed Plaintiff's Brief in Opposition to Defendants Petition for Attorney Fees and Costs and, alternatively, in Support of Contingent Motion for Discovery and a Hearing on Said Petition.  Contemporaneously with its Brief in Opposition, Plaintiffs filed Plaintiff's Contingent Motion for Discovery and a Hearing on Defendants' Petition for Attorney Fees and Costs.  On July 19, 2006, after the Court granted them numerous extensions of time, Defendants filed Defendants' Reply in Support of Petition for Attorneys' Fees and Costs.  For the following reasons, the Court grants in part and denies in part Defendants' Petition and denies as moot the Plaintiff's Contingent Motion.

**PROCEDURAL BACKGROUND**

On January 29, 2002, Plaintiff Eagle Services Corporation ("Eagle") filed a Complaint against Defendants H20 Industrial Services, Inc. ("H2O"), Donald L. Brammer, Carl F. Taylor, Kenneth Koth, Donna M. Seng, and Kurt Looft.  In its Complaint, Eagle alleged copyright infringement, misappropriation of trade secrets, civil and criminal conversion, and tortious interference with business relationships and sought a preliminary injunction.

On February 21, 2002, Eagle filed a Motion for Preliminary Injunction.  On February 25, 2002, Eagle amended its Motion, and thereafter filed a Motion to Dismiss Count VI of its Complaint

(Preliminary Injunction).  On May 29, 2002, District Court Judge Phillip P. Simon granted Eagle's Motion to Dismiss and Eagle withdrew its Amended Motion for Preliminary Injunction.

On March 11, 2002, the Defendants filed a Motion to Dismiss Eagle's Complaint, alleging that the Court lacked jurisdiction over the subject matter of Eagle's Complaint.  The Defendants claimed that registration of a copyright is a jurisdictional prerequisite to an action for infringement and that because Eagle had failed to plead that it had obtained a copyright registration, the Court lacked jurisdiction over Eagle's Complaint.  On March 22, 2002, Eagle filed its First Amended Complaint and response to the Defendants' Motion to Dismiss.  Eagle's First Amended Complaint alleged a registered copyright.  On April 26, 2002, Judge Simon denied the Defendants' Motion to Dismiss as moot.

On May 16, 2002, the Court granted Eagle's motion to voluntarily dismiss Defendant Looft.

On June 7, 2002, Defendants H20, Brammer, Taylor, Koth, and Seng filed an Answer to Eagle's First Amended Complaint.  On January 29, 2003, the Defendants filed an Amended Answer to Eagle's First Amended Complaint.

On January 29, 2003, H20 filed a Third-Party Complaint against John Augustinovich and Sam Raich III and filed a Counterclaim against Eagle.  On April 21, 2003, the Third-Party Defendants filed an Answer to H2O's Third-Party Complaint, and Eagle filed its Answer to H2O's Counterclaim.

On October 21, 2003, Defendants H20, Brammer, and Taylor filed  Motion #1 for Partial Summary Judgment.  Also on October 21, 2003, Defendants H20, Brammer, Taylor, and Koth filed Motion #2 for Partial Summary Judgment.  In Motion #1, the Defendants alleged that Eagle's Amended Complaint did not state a cause of action against individual Defendants Taylor, Koth, and Seng and that Eagle's state law claims (civil and criminal conversion, tortious interference with business relationships, and misappropriation of trade secrets) were preempted by the Copyright Act. In Motion #2, the Defendants asserted that Eagle did not own a valid copyright because significant portions of the materials in which Eagle claimed a copyright were created by M&R Consulting

2

Group, LLC, ("M&R") an independent contractor.

On January 5, 2004, Judge Simon granted the Defendants' Motion #1 for Partial Summary Judgment as to the issues of Defendant Koth's individual liability for the infringement and the preemption of Eagle's state law claims but denied Motion #1 with respect to the issue of individual liability for Defendants Taylor and Seng.  Judge Simon also denied Motion #2 for Partial Summary Judgment, finding that genuine issues of material fact exist concerning the relationship between Eagle and M&R.

On May 5, 2004, Judge Simon granted the parties' Joint Stipulation for Dismissal of Counterclaim and Third Party Complaint, thereby dismissing H2O's Counterclaim against Eagle and H2O's Third-Party Complaint against John Augustinovich and Sam Raich III.

The parties consented on October 13, 2004, to have this case reassigned to the undersigned Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

On October 21, 2004, Eagle filed its Second Amended Complaint against Defendants H20, Niloff, Brammer, Seng, and Taylor.  On November 22, 2004, the Defendants filed an Answer to Eagle's Second Amended Complaint.

On February 11, 2005, the Defendants filed Motion #3 for Summary Judgment and Motion #4 for Partial Summary Judgment along with supporting materials.  On September 28, 2005, the Court denied Motion #3 for Summary Judgment and granted Motion #4 for Partial Summary Judgment.

On December 21, 2005, the Defendants filed their Motion for Reconsideration of 9/28/05 Order and Motion for Clarification of 9/28/05 Order.  On February 22, 2005, the Court denied the Defendants' Motion for Reconsideration of 9/28/05 Order but granted the Defendants' Motion for Clarification of 9/28/05 Order.  Accordingly, the Court clarified that in ruling on Defendants' Motion #3 for Summary Judgment, the Court ruled as a matter of law that Eagle's Manual was copyrightable.

On March 6, 2006, the jury trial in this matter began.  On March 10, 2006, after the Plaintiff rested its case, pursuant to Federal Rule of Civil Procedure 50, the Defendants' made an oral motion for judgment as a matter of law.  After hearing oral arguments on Defendants' Motion and after a brief recess, the Court granted the Defendants' oral motion for judgment as a matter of law, holding that the Plaintiff failed to meet its burden to prove that any of Defendants' revenues were reasonably related to the infringement. More specifically, after detailing the basis for its conclusion, the Court found that "in this case, an indirect profits case, the causal connection or the nexus between the infringement by H2O and its business revenue is too attenuated and too remote to go the jury." Transcript of Record at 43 (D.E. 222).

## FACTUAL BACKGROUND

During 1996, Eagle attached notices of copyright to a safety manual ("Manual"), which it used to ensure compliance with industrial workplace safety regulations promulgated by the U.S. Occupational Safety & Health Administration ("OSHA").  According to the testimony of H2O's president and vice president, Eagle's Manual served two primary functions: 1) to ensure workplace safety; and 2) for marketing purposes.  During or before December 2001, H20 and certain of its employees reproduced and distributed Eagle's Manual and used the same in connection with the operation of H20's business.

Eagle's Manual was first created and published in 1996; however, certain portions of the Manual were revised in later years.  Eagle obtained its Certificate of Registration from the U.S. Copyright Office for the "Eagle Safety Procedures Manual" on March 1, 2002, more than five years after the date of first publication.  The Manual in which Eagle claims a copyright was identified in Eagle's Certificate of Registration by the single title of "Safety Policies & Procedures."

## DISCUSSION

In their Motion, pursuant to Federal Rule of Civil Procedure 54(d)(1), the Defendants request as prevailing parties (1) their recoverable attorneys' fees under to 17 U.S.C. § 505 and (2) their recoverable costs under 28 U.S.C. § 1920.

## A.    ATTORNEYS' FEES

In their Motion, Defendants argue that they satisfy the standard for the recovery of attorneys' fees in a copyright case.  As an initial matter, Defendants note the "very strong" presumption in favor of awarding attorneys' fees in a copyright case when the defendant prevails.  Further, Defendants assert that the "two most important considerations", i.e., the strength of the prevailing party's case and the amount of damages or other relief the party obtained, as determined by the Seventh Circuit, weigh in their favor because (1) "Defendants' case was so strong that they were awarded judgment as a matter of law at trial", and (2) despite being the prevailing party, "Defendants received no monetary award."  Defs.' Pet. For Att'ys' Fees And Costs at 4-5 (hereinafter, "Defs.' Pet.").   In addition, Defendants argue that other factors of objective unreasonableness and motivation support an award of attorneys' fees.

Plaintiff responds proffering three main arguments: (1) the length of the litigation resulted from Defendants' "vexatious conduct during discovery" as well as four motions for summary judgment filed by Defendants; (2) Defendants' did not bear the attorneys' fees and costs at issue, but instead their insurance company, Northland Insurance Companies, defended the instant matter; and (3) the case presented a unique question of law on the issue of damages.

The Court will address the parties' arguments in more detail below.

## STANDARD

The Copyright Act of 1976 authorizes the court to award reasonable attorney's fees and costs to the prevailing party in a suit brought under the Act. *See* 17 U.S.C. § 505. Section 505, which governs costs and attorney's fees in copyright infringement actions, provides, in its entirety:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Unlike other types of actions, in copyright suits "prevailing plaintiffs and prevailing defendants are to be treated alike."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The determination of whether any fees will be awarded remains within the court's discretion.  *Id.*

5

While the *Fogerty* Court recognized that "[t]here is no precise rule or formula" to decide whether to award fees in a copyright action", *id.* (citation omitted), the Supreme Court provided a non-exclusive list of factors for lower courts to consider, including: (1) frivolousness; (2) motivation; (3) objective unreasonableness (legal and/or factual); and (4) compensation and deterrence. *Id.* at 535 n. 19 (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). *Fogerty* further noted that "such factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act [, i.e., "to encourage the production of original literary, artistic, and musical expression for the good of the public," *id.* at 524,] and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.* at 535 n. 19.

Subsequent to *Fogerty*, the Seventh Circuit narrowed the inquiry by adding that "[t]he two most important considerations in determining whether to award attorney's fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *Assessment Tech. of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004). Furthermore, "[w]hen the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." *Id.* at 437 (citation omitted); *see also Gonzales v. Transfer Tech., Inc.*, 301 F.3d 608, 610 (7th Cir. 2002). The Seventh Circuit justified its "very strong" presumption because "without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights." *Id.*

The Court will address the instant Motion by weighing the factors laid out by the Supreme Court in *Fogerty* and refined in *Assessment Technologies*.

## ANALYSIS

*1.      Amount of damages or other relief Defendants obtained*

Defendants argue that this factor weighs in favor of fees because "despite winning the case Defendants received no monetary award." Def. Pet., at 5. Plaintiff fails to specifically address this

factor.

The Court finds that because the Defendants received no damages or other relief at trial, this factor weighs in favor of fees.

2.      *Strength of Defendants' case*

a.      *Defendants' argument*

Defendants argue that this factor weighs in favor of fees because the "Defendants' case was so strong that they were awarded judgment as a matter of law at trial."  Def. Pet. at 4.

The Court disagrees with the Defendants' contention that its decision to grant judgment as a matter of law at trial automatically translates to a finding that their case was sufficiently strong to warrant attorneys' fees under § 505.[1]  The Defendants offer no analysis as to why the merits of their case is strong; on the contrary, the Defendants only argue that their case is strong because the Court granted judgment as a matter of law.  The Defendants offer no case law or argument as to why the Court's decision regarding the causal connection or nexus between the infringement and business revenue in a disgorgement of profits case was the correct decision.  In fact, nowhere in the Defendants' Petition or Reply do they even cite the one case relied upon by the Court in granting judgment as a matter of law.

On the contrary, the Defendants merely cite two cases in support of their broad contention that "[c]ourts repeatedly have held in copyright infringement cases that an award of attorneys' fees is proper when a party has prevailed by obtaining judgment as a matter of law."  Defs.' Pet. at 5. After careful review of the two cases, the Court finds that neither case stands for the proposition enunciated by the Defendants.  First, in *Diamond Star Bldg. Corp v. Freed*, 30 F.3d 503 (4th Cir. 1994), the district court granted defendant judgment as a matter of law but denied attorney fees to

---

[1]The *Fogerty* Court rejected the argument that prevailing parties in copyright cases "should be awarded attorney's fees as a matter of course, absent exceptional circumstances."  *Fogerty*, 510 U.S. at 533.  The Court explained: "The word 'may' [in section 505] clearly connotes discretion.  The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion."  *Id.*

7

the prevailing defendants.  On appeal, the Fourth Circuit held that the defendants were entitled to fees given the objective unreasonableness of the plaintiff's position and the need to deter a party from pursuing frivolous litigation.  *Id.* at 506.  At no point in the analysis in *Diamond Star* does the Court state, either explicitly or implicitly, let alone hold that a court's decision to grant judgment as a matter of law evidences a finding that a party's case was strong enough to warrant attorneys' fees under § 505.  Accordingly, *Diamond Star* does not stand for the proposition that fees are proper when a party prevails by obtaining judgment as a matter of law; instead, *Diamond Star* asserts that fees are proper when the plaintiff's case is unreasonable and deterrence against frivolous litigation favors fees.  *See Diamond Star*, 30 F.3d at 507 ("We do not hold that attorney's fees and costs must be awarded as a matter of course under § 505; however, on the facts presented, the district court erred in failing to accord appropriate weight to Diamond Star's pursuit of an utterly meritless claim").  As far as this Court can tell, the fact that the defendant prevailed on directed verdict played no role in the Fourth Circuit's decision in *Diamond Star* to reverse the district court and award fees.  Accordingly, this case is not persuasive for the reason cited by the Defendants.

The next case relied upon by the Defendant is *ABC, Inc. v. Primetime 24*, 67 F.Supp.2d 558, 560-62 (M.D. N.C. 1999), in which the district court found that the defendant had failed as a matter of law to establish any of its affirmative defenses and thus granted summary judgment in favor of the plaintiff.  The Court only awarded fees after weighing the *Fogerty* factors; in particular, the Court determined that (1) "the motivation-of-the-parties factor", *id.* at 563, (2) the fact that the defendant "ignore[d] requirements of the [relevant law] and pursue[d] a legal standard that it found more convenient", *id.*,; and (3) the strong consideration of deterring repeated infringement under circumstances indicating a "willful disregard" for the relevant law, *id.* at 564, all weighed in favor of attorney fees.  Similarly to Diamond Star, the *ABC* Court makes no reference to judgment as a matter of law as influential in its decision to grant attorney fees, and thus the Court finds that this case is not persuasive for the reason cited by the Defendants.

8

In summary, the Court finds that both *Diamond Star* and *ABC* do not stand for the proposition that fees are "proper" when a court grants judgment as a matter of law; but instead, *Diamond Star* and *ABC* represent mere examples of cases in which a court granted judgment as a matter of law and proceeded to grant fees *only after* applying the *Fogerty* factors and determining that certain factors weighed in favor of fees.

   b.  *Court's interpretation of the strength of Defendants' case*

The Defendant prevailed when the Court ruled that "in this case, an indirect profits copyright case, the causal connection or the nexus between the infringement by H2O and its business revenue [wa]s too attenuated and too remote to go to the jury."  Transcript of Record at 43 (D.E. 222).  Therefore, the proper analysis here is to weigh the strength of the Defendants' case.

17 U.S.C. 504(b) provides that:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.  In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

In support of its decision, the Court relied on *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 217 F.Supp.2d 737 (D. Md. 2003), for the proposition that a court "must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and the subsequent indirect profits."  *Id.* at 751 (citation omitted).  The *Lowry's* Court further clarified that a court may deny recovery if the profits "are only remotely or speculatively attributable to the infringement."  *Id.* (citation omitted).

The instant Court relied on *Lowry's* because of the lack of Seventh Circuit case law on point.  At the time of the Defendant's motion for judgment as a matter of law and in the instant briefs, neither the Plaintiff nor the Defendants offered any case law from this Circuit in support or against their respective positions on the link between infringement and indirect profits in a copyright case.

9

Accordingly, the Court concludes that this area of copyright law in this Circuit is largely unsettled and novel, and therefore, attorney's fees are not appropriate. See *Automation By Design, Inc. v. Raybestos Products Co.*, No. 1:03-CV–575-JDT-TAB, 2005 WL 4889223, at *1 (S.D. Ind. July 26, 2005) (denying fees to prevailing defendant on summary judgment "in a case that required the court to analyze an area of law where the Seventh Circuit's position was somewhat vague"); *Bourne Co. Walt Disney Co.*, No. 91 CIV. 0344 (LLS), 1994 WL 263482, at *2 (S.D.N.Y. June 10, 1994) ("Ordinarily an award of attorney's fees is not appropriate in copyright cases involving novel, complex, or unsettled issues of law and fact"). Furthermore, when close cases involving difficult facets of copyright law are litigated, the law benefits. *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74-75 (1st Cir.1998) ("When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries").

   c.  *Conclusion*

  The Court finds that the Defendant's case (i.e., the causal connection or nexus between the infringement and business revenue was too remote or attenuated to proceed to the jury) is not sufficiently strong to tip the scale in favor of fees. Further, the Court finds that the novel and unsettled nature of this area of copyright law in this Circuit in cases seeking indirect profits weighs against fees.

*3.*  *Frivolousness*

  While neither the Defendant nor the Plaintiff raise the frivolousness factor in support of or against the instant fees Motion, the Court will address the issue of frivolousness and ultimately determine that this factor weighs against fees.

   a.  *Defining a frivolous copyright claim*

  A frivolous lawsuit is "[a] lawsuit having *no legal basis*, often filed to harass or extort money from the defendant." *Black's Law Dictionary* 296 (2d pocket ed. 2001) (emphasis added). Therefore, the Court must determine whether the Plaintiff's lawsuit lacked any legal basis. In order to make this determination, the Court will look to the basic elements of a copyright claim.

To succeed on a copyright infringement claim, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991) (citation omitted); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994). Further, proof of ownership breaks down into several constituent parts: (1) originality in the author; (2) copyrightability of the subject matter; (3) a national point of attachment of the work, such as to permit a claim of copyright; (4) compliance with applicable statutory formalities; and (5) (if the plaintiff is not the author) a transfer of rights or other relationships between the author and the plaintiff so as to constitute the plaintiff the valid copyright claimant. *See* 1 M. Nimmer & D. Nimmer § 13.01[A] (2006).

Here, Defendants moved for summary judgment (Motion #3 for Summary Judgment) arguing that, among other things, Eagle's Manual was not entitled to protection under copyright law because it was comprised solely of procedures, processes, systems, methods of operation, or concepts for complying with OSHA regulations, all of which are precluded from copyright protection under the Copyright Act. In the alternative, Defendants asserted that, even if Eagle's Manual was not outside the scope of copyright protection, it is, nevertheless, still not entitled to copyright protection because it is almost exclusively comprised of verbatim copies of, close paraphrases of, expressions which are inseparable from or the functional equivalent of, or stock and standard expressions which are common to any discussion of OSHA regulations. Finally, Defendant argued that portions of Plaintiff Eagle's Manual were not copyrightable based on the doctrines of merger[2] and *scènes à faire*.[3]

After framing the relevant standard, the Court found that Plaintiff's Manual was "protectable as a compilation under the Copyright Act and that the doctrines of merger and scènes à faire d[id]

---

[2]The merger doctrine "bars copyright protection when 'there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.' " *Eagle Services Corp.*, 2005 WL 2406041, at *6 (quoting *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991)). "[T]he key to applying the merger doctrine is correctly stating the idea at issue." *Eagle Services Corp.*, 2005 WL 2406041, at *6.

[3]*Scènes à faire*, which can be defined as "scenes which must be done", *Eagle Services Corp.*, 2005 WL 2406041, at *8 (citation omitted), "refers to incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic," *id.* (internal quotation and citations omitted).

not preclude copyright protection to Eagle's Manual." *See Eagle Services Corp. v. H2O Industrial Services, Inc.*, No. 2:02-CV-36-PRC, 2005 WL 2406041, at *13 (N.D. Ind. Sept. 28, 2005).  As to the merger doctrine, the Court found that it does not preclude copyright protection for Eagle's Manual because the format and structure of the Manual chosen by the Plaintiff was "not unavoidable", but in fact "[t]here [we]re many different ways in which a company c[ould] structure and organize its safety materials." *Id.* at *7.  Similarly, as to *scènes à faire*, the Court found that it does not preclude copyright protection for Eagle's Manual because "it is possible to have different ways in which to express a company's safety processes and methods." *Id.* at *8.  Finally, as to Defendant's factual compilation argument, the Court found that (1) "the existence of any 'internal changes' to the OSHA regulations in Eagle's Manual [were] *de minimus* and of no legal significance to a determination of copyrightability in this case", *id.* at *10, and (2) Eagle's "selection, coordination, and arrangement of the contents in its [S]afety Manual satisf[ied] the originality standard" as determined by the Supreme Court, *id.* at *12.[4]

Shortly after its ruling, the Court revisited the issue of the copyrightability of Eagle's Manual when the Defendant filed their Motion for Reconsideration of 9/28/05 Order and their Motion for Clarification of 9/28/05 Order.  Of particular relevance here, Defendant argued that the Court erred in concluding that the Manual was copyrightable and *sua sponte* granting summary judgment in favor of Plaintiff.  The Court clarified its previous ruling, noting that it "issued a ruling on the copyrightability of Eagle's Manual, an issue put before it by the Defendants." *Eagle Services Corp. v. H2O Industrial Services, Inc.*, No. 2:02-CV-36-PRC, 2006 WL 449210, at *7 (N.D. Ind. Feb. 22, 2006) ("Reconsideration Order").  The Court further clarified that its Order on Motion #3 for Summary Judgment "addressed only the second element of a copyright cause of action" and

---

[4]The Court also ruled on Defendant's Motion #4 for Summary Judgment, in which they moved for partial summary judgment in their favor on the basis that Plaintiff was not entitled to the statutory presumption of validity as provided in the Copyright Act because Plaintiff failed to register its copyright with the U.S. Copyright Office until more than five (5) years the date of first publication of its Safety Manual.  In response, Plaintiff Eagle conceded the fact that it is not entitled to the statutory presumption of ownership of a valid copyright, and thus the Court granted Defendant's Motion #4 for Summary Judgment.  Therefore, Plaintiff Eagle bore the burden at trial of proving that it owned a valid copyright.

"concluded that Eagle's Manual is copyrightable as a compilation under the Copyright Act." *Id.* at *8. Consequently, the Court determined that Plaintiff "will be required to prove the remaining ownership elements at trial: originality in the author; a national point of attachment of the work, such as to permit a claim of copyright; compliance with applicable statutory formalities; and (if the plaintiff is not the author) a transfer of rights or other relationships between the author and the plaintiff so as to constitute the plaintiff the valid copyright claimant." *Id.* at *9 (citing Nimmer § 13.01[A]).

Applying the Court's ruling on Motion #3 for Summary Judgment as well as its Reconsideration Order to the instant fees Motion, the Court finds that its rulings, at the very least, establish that the Plaintiff possessed a legal basis, in the form of a protectable copyright interest, for its lawsuit. While the Plaintiff certainly had more to prove at trial in order to succeed on its copyright claim, the Court finds that Plaintiff's lawsuit overcomes the low standard of frivolousness.

     b.    *Examples of frivolous copyright claims*

Because the case law fails to provide concrete direction on frivolity in terms of attorney's fees under § 505, the Court will look to other cases in which a court has deemed a plaintiff's case to be frivolous. In *Assessment Technologies*, while discussing the frivolousness factor, the Seventh Circuit stated while "we do not go so far as to call the suit frivolous, the suit was marginal ... ." 361 F.3d at 437. The Court reasoned that the plaintiff in that case "was rather transparently seeking to annex a portion of the intellectual property domain." *Id.* The Court went so far as to say that while it declined to reach the question of whether the plaintiff's conduct rose to the level of actual copyright misuse, that case "came close, and an award of attorneys' fees to the defendant is an appropriate sanction." *Id.*

The Court finds that the facts of the instant case, in terms of frivolousness and possible copyright misuse, pale in comparison to the facts of *Assessment Technologies*. Neither Defendants' June 7, 2002 Answer nor their January 29, 2003 Amended Answer make any mention of copyright

13

misuse as an affirmative defense or otherwise.[5]  At no point in this litigation, as far as the Court is aware, have the Defendants alleged copyright misuse on the part of the Plaintiff.

The Court offers another example: in *NLFC, Inc. v. Devcom Mid-America, Inc.*, 916 F.Supp. 751 (N.D. Ill. 1996), the Court held that "[w]hile the mere fact that [plaintiff] lost on summary judgment does not alone establish frivolity, the fact that [plaintiff] supplied not a single piece of testimonial evidence at the dispositive summary judgment phase evidences frivolous litigation." *Id.* at 759-59.  As a result, in *NLFC*, the Court found the Plaintiff's suit to be frivolous.  On the contrary here, the Plaintiff vigorously opposed four motions for summary judgment, in which it offered substantial evidence including deposition testimony and other exhibits in support of its positions.

Accordingly, the Court finds that the Plaintiff's lawsuit was not frivolous and thus this factor weighs against fees.

*4.     Motivation*

Defendant argues that the Plaintiff's motivation in bringing this lawsuit "was to negatively impact its primary competitor by forcing it to go through a lengthy and costly legal battle and to adversely impact [its] business."  Def. Pet. at 6.  Defendant notes that, as a result of this lawsuit, Plaintiff obtained its customer lists, proposals to customers, billings to customers, supplier invoices, and financial statements.  In support, Defendant offers the following as evidence of Plaintiff's anti-competitive motivation: (1) Defendant H2O is a competitor with the Plaintiff and all of the named individual Defendants previously worked for the Plaintiff; and (2) Plaintiff's President testified that "he had no idea what, if any, damages Plaintiff incurred as a result of the alleged infringement." Def. Pet. at 6.  Plaintiff responds that its motivation in bringing the lawsuit was two-fold: (1) to stop Defendant H2O from infringing its copyright; and (2) "when it became apparent that H2O was continuing to infringe [its] copyright, Eagle continued to pursue this litigation." Pl. Br. Opp'n Defs.'

---

[5]"Copyright law recognizes an equitable defense for copyright misuse, which can bar enforcement of an otherwise valid copyright against otherwise unlawful copying." *Batesville Services, Inc. v. Funeral Depot, Inc.*, No. 1:02-CV-01011-DFH-TA, 2004 WL 2750253, at *13 (S.D. Ind. Nov. 10, 2004).  "The doctrine of misuse prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) (citations and internal quotation omitted).

Pet. Att'y Fees Costs And Alternatively Supp. Contingent Mot. Disc. And Hr'g On Pet. at 15 (hereinafter, "Pl. Br."). Plaintiff further argues that there is "absolutely no evidence of any anti[-]competitive motive on the part of Eagle." Pl. Br. at 15.

The Court finds that the Defendant fails to specifically allege any evidence that demonstrates a bad faith or an anti-competitive motivation on the part of the Plaintiff in filing the instant litigation. In support of its allegation, the Plaintiff merely notes the fact that the parties are competitors, a point which the Court finds, without more, fails to substantiate its allegation. Defendant fails to offer any specific, concrete evidence of an anti-competitive motive. On the contrary, Defendant's theory is mere speculation. The fact that the parties in litigation are competitors in business, without more, does not translate into an anti-competitive motivation in the litigation. The Court finds that the Defendant makes an unjustifiable leap from its purported evidence to a conclusion of an improper motivation on behalf of the Plaintiff in filing the instant lawsuit.

As to the fact that the Plaintiff named individuals as Defendants who previously worked for the Plaintiff, the Court finds that this, again, without more, fails to substantiate the Defendant's allegation. Defendant's allegation of an improper or anti-competitive motive based on the fact that certain individual Defendants previously worked for the Plaintiff is mere speculation. Furthermore, the Court found that, at the summary judgment stage, as to two individual Defendants, "the positions held by [Defendants] Taylor and Seng combined with the facts listed above [i.e., their level of participation with regard to the alleged infringement,] lead this Court to believe that a material issue of fact remains as to their role in the infringing activity and whether or not they can be held personally liable for that conduct." Order at 6 (D.E. 93). Therefore, in the Court's opinion, sufficient evidence existed as to the individual liability for infringement of Defendants Taylor and Seng in order for those issues to proceed to trial.

In addition, the Plaintiff also demonstrated that it only sought to pursue meritorious claims against the individual Defendants when it conceded summary judgment as to the individual liability for infringement of Defendant Koth, to whom the Court granted summary judgment on January 5,

15

2004.  In the same manner, on May 16, 2002, the Court granted Defendant Eagle's Motion to Voluntarily Dismiss Defendant Looft.  Plaintiff Eagle's actions as to Defendants Koth and Looft demonstrates not an anti-competitive motivation or a lawsuit designed to "harass these individuals or to scare them into submission", as alleged by Defendant.  Def. Pet. at 6.  On the contrary, Plaintiff's actions attest to its legitimate and good faith motivation in filing the instant lawsuit against the individual Defendants, and when, during discovery, the Plaintiff learned that certain defendants were not liable for the copyright infringement, the Plaintiff took the appropriate steps, i.e., voluntary dismissal and conceding summary judgment.  Finally, on May 29, 2002, the Court granted Plaintiff Eagle's Motion to Dismiss Count VI (Preliminary Injunction), which, once again, reveals a motivation on behalf of the Plaintiff to only pursue those counts with merit.  Therefore, the Court finds that the Defendants' argument as to the individual named Defendants not only fails to support a finding of an improper or anti-competitive motivation, but demonstrates that the Plaintiff pursued the instant litigation in good faith.

As to the Plaintiff's second point (i.e., President of Plaintiff Eagle having no idea about damages), the Court finds that this also does not demonstrate any ulterior or improper motive but merely demonstrates that the President of Plaintiff Eagle does not possess an understanding or working knowledge of a complicated or unclear facet of copyright law such as the necessary nexus between an infringement and indirect profits.

In further support of the alleged anti-competitive motivation, Defendant highlights the amount of discovery in this case and the fact that the Plaintiff was able to obtain certain documents and information as further evidence of the Plaintiff's improper motive.  However, the Court finds that the Plaintiff's actions in discovery demonstrate the opposite.  In *NLFC*, the Court reasoned that the Plaintiff's failure to initiate "any discovery whatsoever" led it to conclude that the Plaintiff "was not motivated by a good faith intent to prevail, but rather, a bad faith to harm [the defendant] by forcing [it] into extremely costly litigation."  916 F.Supp. at 759-60.  The Court noted that the Plaintiff "never even tried to gather evidence to support its case."  *Id.* at 760.  Accordingly, the Court

found that the Plaintiff's "course of conduct exhibits bad faith motivation to harass [the defendant] rather than a motivation to protect its property interests." *Id.* at 760.

Quite to the contrary here, the Plaintiff pursued discovery vigorously as evidenced by a lengthy discovery period which included numerous motions to compel.  In fact, in direct contradiction of the Court's finding in *NLFC*, Defendant points to Plaintiff's vigorous discovery as evidence of an improper motive on behalf of the Plaintiff.  The Court disagrees with the Defendant's characterization of Plaintiff's discovery.  The Court finds that Plaintiff's vigorous discovery demonstrates a good faith motivation and belief that its claims were well-founded in that it demonstrates a genuine motivation to uncover evidence to substantiate its claims.  As opposed to the plaintiff's action in *NLFC*, Plaintiff Eagle tried to gather evidence to support its case.

Accordingly, because the Court finds that the Defendant fails to demonstrate with sufficient evidence a bad faith or anti-competitive motivation on behalf of the Plaintiff in bringing the instant litigation, this factor weighs against fees.

5.    *Objective unreasonableness*

Defendant argues that this factor weighs in favor of fees because (1) the Plaintiff lacked a reasonable basis to name individual Defendants in this case because they were acting on behalf of Defendant H20, and (2) the Plaintiff's argument that Defendant H20 could not have been in business but for its infringement was objectively unreasonable.  The Plaintiff responds arguing that (1) "ample reason" existed to name the individual Defendants, and (2) this case was a "close call" in a field of law in which little guidance or direction existed, and thus a copyright holder should not be penalized for attempting to protect its copyright.

First, as to the Plaintiff naming individual Defendants, as described in detail above with regard to the motivation factor, the Court held on summary judgment that, as to two individual Defendants, "the positions held by [Defendants] Taylor and Seng combined with the facts listed above [i.e., their level of participation with regard to the alleged infringement,] lead this Court to believe that a material issue of fact remains as to their role in the infringing activity and whether or

not they can be held personally liable for that conduct." Order at 6 (D.E. 93).  Accordingly, the

Court finds that it was not objectively unreasonable for the Plaintiff to name Taylor and Seng as

individual Defendants in this matter.  Further, as to the other individual Defendants named by the

Plaintiff, Niloff and Brammer were both officers/owners of Defendant H2O.  The Defendants did

not file a motion for summary judgment as to the individual liability of Defendants Niloff and

Brammer, which, in the Court's opinion, demonstrates the Defendants' implicit concession that, at

the very least, a genuine issue of material fact existed as to the individual liability of Defendants

Niloff and Brammer.  Such action, or lack of action (i.e., not filing a motion for summary judgment

as to Defendants Niloff and Brammer), implies that Defendant H2O considered Plaintiff's claims

against those two individuals to be strong enough to proceed to a jury.  Therefore, the Court finds

that the Plaintiff's naming of individual Defendants does not support a finding of objective

unreasonableness.

Second, as to the Plaintiff's theory of its case, the Court finds that it was not objectively

unreasonable.[6]  Plaintiffs argued that because OSHA and IOSHA required employers to have written

safety manuals, Defendant H2O could not have done any business without the safety manuals.

Therefore, the Plaintiff argued, Defendant H2O's profits were attributable to its infringing activities

because Defendant H2O could not have obtained or completed a single job without compliance with

IOSHA regulations.

However, in granting judgment as a matter of law, the Court found that although OSHA and

IOSHA required an employer to have safety documents, neither OSHA nor IOSHA possessed the

authority to shut down an employer for failing to have such documentation without applying for a

court order.  *See* Ind. Code § 22-8-1.1-25.1 (1994) ( "Violations; safety order; service; limitation");

Ind. Code § 22-8-1.1-35.6 (1994) ("Enforcement of safety orders, etc.").  In addition, the Court

opined (as it turns out, correctly, *see* Ind. Code § 22-8-1.1-25.1(a)(3)) that OSHA and/or IOSHA

---

[6]While *Fogerty* instructs courts to consider objective unreasonableness in terms of both the facts and law, Defendants only argue that the Plaintiff's theory was objectively unreasonable as a matter of law.

would have given the employer a period of time to come into compliance.

Although it turned out that the Plaintiff's theory was erroneous, the Court finds that this facet of the case was not fully developed by the parties until the time of mid-trial when the Defendant moved for judgment as a matter of law.  In fact, Defendant never made any dispositive motion, or any other type of motion, regarding Plaintiff's theory and whether an entity can conduct business without a Manual until the fifth day of trial.  Objectively speaking and as the presiding judicial officer over the instant trial, the Court cannot say that Plaintiff's theory was objectively unreasonable even though it proved to be without merit in the end.  *See Waite v. Patch Products, Inc.*, 12 Fed. Appx. 330, 335-36 (6th Cir. 2001) (unpublished decision[7]) (refusing to "disturb" the lower court's denial of defendants' request for attorney fees, in a case where the district court granted summary judgment in favor of defendants but "reasoned that [the plaintiff's] claims were brought in good faith and were warranted under existing law, even though they were found to be meritless in the end"); *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1200-01 (10th Cir. 2005) (affirming the district court's decisions granting summary judgment in favor of defendants but denying defendants' attorney's fees where "the district court explicitly considered the nonexclusive *Fogerty* factors and found in its discretion that while [plaintiff's] claims were unsuccessful, it would not award attorney's fees to the defendants); *Johnson v. Tuff-N-Rumble Mgmt., Inc.*, No. CIV.A.99-1374, 2000 WL 1145748, at *11 (E.D. La. Aug. 14, 2000) (granting summary judgment in favor of defendant but denying its request for fees where plaintiff's claims were "colorable and its position not objectively unreasonable").  And further, the Court declines to judge the reasonableness of the Plaintiff's case through the narrow lens of hindsight.  *See Garnier v. Andin Intern., Inc.*, 884 F.Supp. 58, 62 (D. R.I. 1995) ("Hindsight is not the applicable standard in judging the reasonableness of [plaintiff's] suit, and at the time of initiation, [plaintiff] took a reasonable stand on an unsettled principle of law.  To view the plaintiff's conduct retroactively

---

[7]While the *Waite* case was not recommended for full-text publication, Sixth Circuit Rule 28(g) allows for citation here. *See* 6th Cir. R. 28(g) ("Citation of unpublished opinions is permitted").

would punish [plaintiff] for litigating a very debatable aspect of the copyright law").

Finally, the Court also notes that Plaintiff's case was objectively reasonable in terms of the facts. The Plaintiff had a copyrightable interest in its Manual and possessed substantial evidence that led it to believe that the Defendants copied and used all or parts of its Manual. Accordingly, Plaintiff's decision to initiate and pursue this lawsuit was objectively reasonable.

Accordingly, the Court finds that this factor weighs against fees.

6. *Deterrence*

Similarly to the frivolousness factor, while neither the Defendant nor the Plaintiff raise the deterrence factor in support of or against the instant fees Motion, the Court will address the issue of deterrence and ultimately determine that this factor balances equally neither in favor nor against fees.

In *Assessment Technologies*, the Seventh Circuit opined that prevailing parties in copyright suits are treated alike because "the plaintiff in such a suit is not a little guy suing a big guy–an employee suing an employer, for example–but often the reverse", *Assessment Technologies*, 361 F. 3d at 436, i.e., a "big guy" suing a "little guy". Here, Plaintiff Eagle is a larger, regional corporation who sued a smaller, Indiana corporation; therefore, the *Assessment Technologies* description of the stereotypical copyright case appears to apply here.  *See Automation*, 2005 WL 4889223, at *2 (footnote omitted) (providing that there is no need to use an award of fees to serve a deterrent effect because "the instant case is not the typical copyright case" resembling "a suit aimed at strong-arming a settlement"). Nevertheless, the Court has previously determined that Plaintiff filed and pursued this lawsuit in good faith and that Plaintiff's claims were not frivolous and Plaintiff's theory was not objectively unreasonable, therefore to award attorney fees as a deterrent serves no purpose because there is no behavior here that the Court deems worthy of deterrence. Therefore, the Court finds that the deterrence factor balances equally.

## CONCLUSION

In conclusion, the Court highlights a case with strikingly similar facts to the instant case. In *Automation By Design, Inc. v. Raybestos Products Co.*, No. 1:03-CV–575-JDT-TAB, 2005 WL

4889223, at *1 (S.D. Ind. July 26, 2005), the Court granted summary judgment in favor of the defendants upon the plaintiff's claimed copyright in certain technical drawings but denied attorney's fees under § 505. After determining from the parties' contract that the plaintiff granted the defendants a nonexclusive license to copy and use the subject technical drawings, the *Automation* Court "adopted the general rule that nonexclusive licenses granted in exchange for consideration are irrevocable." *Id.* at * 1 (citation omitted). Despite adopting that general rule, the Court recognized that the Seventh Circuit's position on this matter was "hazy." *Id.* Thus, even though the defendant prevailed at summary judgment, the Court noted that the Plaintiff had "a reasonable and good faith basis for advancing its claims in a case that required the court to analyze an area of law where the Seventh Circuit's position was somewhat vague." *Id.* The Court noted that the "fact that this was a case turning on fine points of law therefore tips the scales in [plaintiff's] favor on the issue of fees." *Id.* Applying the *Fogerty* factors and the "very strong" presumption laid down in *Assessment Technologies*, the Court concluded that "[t]hough the Defendants did not obtain any compensation despite prevailing at the summary judgment stage, this was a close case in which [the plaintiff] acted in good faith and pursued reasonable arguments." *Id.* at *2.

While the Court in *Automation* also considered the deterrence factor, the Court relied on the reasonableness of the plaintiff's arguments and the "somewhat vague" status of the law in reaching its decision to deny fees despite granting summary judgment for the defendant. The Court finds that the facts of the *Automation* case closely parallel the facts of the instant case. Here, even though the Court entered judgment as a matter of law in favor of Defendants after the close of the Plaintiff's case, the Plaintiff proceeded in good faith without any improper or anti-competitive motivation and put forth reasonable arguments in support of its lawsuit in an area of the law that is "somewhat vague" about which the Seventh Circuit has not yet spoken. As the presiding judicial officer over the five-day trial in this matter, the Court observes that its decision to grant judgment as a matter of law, similarly to *Automation*, was a "close case."

Based on the foregoing, and notwithstanding the "very strong" presumption in favor of attorney fees, the Court finds that the *Fogerty* factors weigh against attorneys' fees in this case.[8]

**B.    COSTS**

In their Motion, Defendants assert that, pursuant to Rule 54(d)(1) and 28 U.S.C. § 1920, they are automatically entitled to the recovery of their costs.  Therefore, Defendants seek the following costs incurred in defending the instant matter: deposition costs and costs to subpoena witnesses in the amount of $11,643.00, photocopy costs in the amount of $13,641.52, and exemplification costs in the amount of $4,906.63, totaling $30,191.15.  Plaintiff Eagle fails to address Plaintiffs' argument regarding costs in its Response.  Nevertheless, in their reply, Defendants assert that they are entitled to $30,331.55, which is $387.58 less than the amount of costs requested in their original Petition.

### STANDARD

Federal Rule of Civil Procedure 54(d)(1), entitled "Costs Other than Attorneys' Fees", provides, in relevant part, that "costs other than attorneys' fees *shall* be allowed as of course to the prevailing party unless the Court otherwise directs ... ."  Fed.R.Civ.P. 54(d)(1) (emphasis added). 28 U.S.C. § 1920 allows the following costs: "(1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees ... ; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."  "The power to award costs under Rule 54 is a matter within the sound discretion of the district court."  *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994) (citing *Badillo v. Central Steel and Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983)). Further, courts must be mindful that under Rule 54, "the prevailing party is prima facie entitled to

---

[8]The Court's decision to deny attorneys' fees includes denial of the Defendants' request in their Reply for fees accumulated in the drafting of the instant Petition.

costs and it is incumbent on the losing party to overcome the presumption." *Id.* (quoting *Popeil Brothers Inc. v. Schick Electric, Inc.*, 516 F.2d 772, 775 (7th Cir. 1975)).

## ANALYSIS

Noting the lack of an objection from the Plaintiff, and pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920, the Court finds that the Defendants may recover costs, requested in their Motion and itemized in the three accompanying Bill of Costs (*see* Defs.' Pet., Ex. A), in the amount of $30,331.55.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Petition for Attorneys' Fees and Costs [DE 231].  The Court **GRANTS** the Petition to the extent that the Defendants seek to recover costs and **ORDERS** the Plaintiff to pay Defendants' costs in the amount of $30,331.55.  The Court **DENIES** the Petition to the extent that the Defendants seek attorneys' fees.  Finally, the Court **DENIES as moot** Plaintiff's Contingent Motion for Discovery and a Hearing on Defendants' Petition for Attorney Fees and Costs [DE 236].[9]

SO ORDERED on this 29th day of March, 2007.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT


cc:      All counsel of record

---

[9]While the Plaintiff's Contingent Motion requested discovery and a hearing on costs as well as attorneys' fees, because the Plaintiff failed to address the Defendants' request for costs under Rule 54(d)(1) and 28 U.S.C. § 1920 in its Response and thus waived any objection to the Defendants' request for costs, the Court declines to hold a hearing on that issue. *See Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (holding that arguments not presented to the court in a response to a summary judgment motion are deemed waived); *Coleman v. Highland Police Dept.*, No. 2:05-CV-416, 2007 WL 294278, at *3 (N.D. Ind. Jan. 26, 2007) (holding that plaintiffs failure to address an argument in response waives "any argument to the contrary").